W. E. POPE V. J. D. POWERS ET AL.

No. 7087. Decided October 26, 1938.
Rehearing overruled November 30, 1938.
(120 S. W., 2d Series, 432.)

*H. S. Bonham* and *J. A. Wood,* both of Corpus Christi, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the fact that as such former judgment was an agreed judgment it was not before the court as the defendant had not pleaded such fact by way of confession or avoidance, in the light of the fact that the suit was one to set aside said judgment because the evidence was insufficient to support it and plaintiff admitted in open court that it was entered without a trial or the introduction of any evidence. Dunman v. Hartwell, 9 Texas 495; McDaniel v. Monday, 35 Texas 40; Tait v. Matthews, 33 Texas 112.

*Sidney P. Chandler,* of Corpus Christi, for defendant in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This is a suit filed by J. D. Powers against W. E. Pope, Theo. T. Priour and wife, Joseph Mireur and Southern Minerals

Corporation, to set aside a judgment in a former suit between the same parties, purporting in that suit, as in this, to adjudicate their rights in an oil and gas lease and mineral deed. The court heard the case without the aid of a jury and rendered judgment in favor of Powers as between him and Pope, the principal litigants. The Court of Civil Appeals affirmed the judgment. 91 S. W. (2d) 873.

In the former suit Pope sued Priour and wife alleging that on January 29, 1926, the Priours executed to Powers an oil and gas lease on the land involved, which was alleged to be still in force and effect when the suit was filed. Pope alleged that he had succeeded to all the rights and privileges of Powers under the lease; that Priour had notified him that the lease had long since expired and was threatening to eject him from the property; that he (Pope) had expended a considerable sum of money toward beginning drilling operations under the lease, and toward keeping the lease in force. He prayed for an injunction restraining the Priours from interfering with his operations and for judgment declaring the lease to be in force and effect. An answer was filed by the original defendants, and Powers and Joseph Mireur were impleaded as cross defendants on the ground they were claiming some interest in the lease. It was specifically alleged as to Powers that the lease executed by the Priours on January 29, 1926, expired on January 28, 1932. Mireur answered and as a basis for seeking affirmative relief against the Priours alleged the execution of a mineral conveyance by them to Powers and himself on July 11, 1925, on the same land covered by the lease first mentioned, of date January 29, 1926. Mireur alleged that the 1925 conveyance did not as written embody the true agreement of the parties and prayed that it be so reformed as to convey to Powers and himself a 1/16th undivided interest in the royalty rather than a 1/16th interest in the minerals as recited in the instrument, which was alleged to be so recited through accident, fraud or mistake. Pope filed a plea in abatement disclosing that Powers and Mireur were necessary parties. There were other pleadings in the former suit, but it is not necessary that their respective allegations be stated. No evidence was offered upon the trial of the case and an agreed, or negotiated, judgment was entered. The recitals of the judgment material here are in substance that the mineral deed was so reformed as to constitute a conveyance from the Priours to Powers and Mireur of a 1/16th undivided royalty interest in the lease covering the land in question. The judgment further decrees, after reciting it appeared that cross-defendant Powers had theretofore

conveyed a portion of the mineral rights to Pope, that the 1/16th royalty interest should be owned by Mireur, Powers and Pope, as follows: a 1/32nd undivided interest by Mireur, and the remaining 1/32nd interest by Powers and Pope jointly. The lease of January 29, 1926, executed by the Priours to Powers was decreed to have expired and was declared "no longer of any force and effect."

The judgment just described is the judgment which Powers seeks in the present suit to set aside. He alleges he was not represented by counsel in that suit and that Pope who purported to act for him did so without authority, and undertook to act for himself as attorney and also for Powers, through H. S. Bonham; that his (Powers') interest as Pope's client was in conflict with the interest adjudicated to Pope by the former judgment, and he had no knowledge that the judgment was being entered. He alleges also as a ground for setting aside the judgment, that there was no pleading in the former suit authorizing entry of a judgment divesting him of any part of his mineral interest, or authorizing the court to decree a joint ownership in the lease by Pope and himself. Powers further alleged he had not at any time assigned to Pope any right or interest acquired by himself under the mineral deed referred to. He prayed that the judgment be set aside and that the lease from the Priours to Southern Minerals Corporation be set aside in so far as same affected his interest, and that his mineral interest be determined.

The answers of Pope, Mireur and the Priours consist of general demurrers and denials respectively.

The decree in the present suit set aside in part and confirmed in part the former judgment. It awards judgment in favor of Powers against Pope, decreeing specifically that he recover from Pope the title and possession of a 1/32nd undivided royalty interest in the mineral rights in the land described in the mineral deed of July 11, 1925. It directs that he take nothing as against the other defendants. It further adjudicates that the part of the judgment decreeing that Powers and Pope have jointly a 1/32nd interest in the royalties, be declared null and void and of no further force and effect to the extent it decrees an interest to Pope, but that as to all provisions pertaining to the other defendants, the judgment be confirmed and declared valid and binding.

The alleged wrongful action of Pope in purporting to represent Powers in procuring the judgment in the former suit is one of the two grounds set up in the present suit as a

predicate for asking that the former judgment be set aside. Both were urged by Powers against Pope, one having to do with his alleged fraudulent conduct, and the other with the alleged insufficiency of his pleading in the former suit to support the judgment entered.

The following broken excerpts from Powers' testimony in question and answer form show the nature of his contention with respect to Pope's having no interest in the minerals and his lack of authority to represent him:

*"Mr. Bonham:* Isn't it a fact you knew that Pope had erected a derrick out there and was trying to get ready to drill a well, and had dug some slush pits and that that was done to hold that lease?

"A. He told me that was for his own account.

"Q. That was after you made the assignment to him?

"A. I will tell you how that assignment was made. Mr. Priour and Mr. Lowe came to me in the street, and Mr. Hamilton Lowe had an assignment drawn up and asked me would I sign it. I had this collection with Pope, and I didn't want to do anything till I saw him. I went to his office and I said, 'Mr. Hamilton Lowe wants me to cancel this lease,' and Mr. Pope said, 'we will not do that thing. I have a man to drill it, and we are going to drill it.' And he made out this transfer of oil and gas lease.

\* \* \* \* \*

"Q. It was your understanding if you had executed that assignment, you would have given up your rights under this lease?

"A. I would have lost it, yes.

"Q. And Mr. Pope said, 'don't do that.'

"A. No, he said he wouldn't do it. He said, 'we won't cancel it.'

"Q. Didn't Mr. Pope tell you at that time he had put some $1500.00 in improvements out there?

"A. No, he didn't tell me anything.

\* \* \* \* \*

"Q. Didn't he tell you about it?

"A. He told me he was drilling a well. He had it in the Times, but it was for his own account, and not my account. I had no interest in that.

"Q. It was on your lease?

"A. He wanted to get the lease.

"Q. You had assigned it to him, had you not?

"A. I assigned it because he had my lease. He wouldn't surrender my lease.

"Q. You didn't have to execute any instrument to him, did you?

"A. It (the lease) would have gone dead."

Powers testified also that the judgment was entered without his knowledge or consent. He does not controvert that he assigned some character of interest in his holdings in the minerals to Pope. The assignments executed by him are in evidence. He testified that Pope "took over an over-riding royalty interest" as his compensation.

The following excerpts from Pope's testimony of the same character as the above excerpts from Powers' testimony show the nature of Pope's contention with respect to his authority to represent Powers and his negotiation of an agreed judgment in accordance with the wishes of both:

"Q. Will you turn to the court there and tell him your connections with this plaintiff in this case, in that old suit of W. E. Pope v. Theodore T. Priour?

\* \* \* \* \*

(Conclusion of the statement) : "But January 28, 1932, the lease would expire unless drilling operations, by the terms of the lease, were begun. There wasn't anything we would do about it. The lease was about to expire, and this man Hale and his crowd had constructed a derrick and drilled a well and gotten it down, supposedly, 1600 feet. So I told Mr. Powers that the thing to do was to make arrangements to start drilling a well.

"Q. Had Hale abandoned or quit at that time?

"A. Hale had abandoned the well and moved away the main machinery and left the derrick there. Mr. Powers said he didn't have any money or any way to drill the well, and I said, 'we will hire somebody to drill the well.' And I negotiated with two or three different people and finally entered into agreement with Mr. Best, who at that time had a drilling rig near Wharton, and I hired Mr. Best to dismantel his rig and hired Mr. Kelley to build the derrick.

\* \* \* \* \*

"Q. Was it along there another assignment was made?

"A. A few days before the 28th of January, 1932, I discussed this matter with Mr. Powers, and he said that he didn't want to get into this matter; that he wasn't able to drill a well, and that he would assign the lease to me. So he had already assigned a one-sixteenth over-riding royalty, and then it was,

on the 23rd of January, 1932, as I recall, anyway, it was a few days before the 28th. I prepared this assignment of the thirteen-sixteenths, and sometime after that he acknowledged it. It wasn't right then. At any rate, I went ahead with these improvements, and this expense. He said he didn't want it to come back on him for any of the cost. I told him it wouldn't cost him anything. That if we could put that drilling rig on there and go ahead with the drilling of this well, that the lease would be worth something. At that time I had spent $1555.00, as I recall.

"Q. What was your agreement with Mr. Powers?

"A. My agreement with Mr. Powers was this, that whatever I spent on the drilling operations, till I could get somebody to drill the well, that I would get that money back and he would get $1500.00, and after that we would have a fifty-fifty interest in the proposition. And we took that interest in the trustee proposition, because I didn't own that outright. (One of the assignments executed by Power to Pope was to Pope as trustee.)

\* \* \* \* \*

"*Judge Jones:* State to the court whatever conversation you had with Mr. Bonham in the presence of Mr. Powers or in the absence of Mr. Powers, in regard to filing this particular suit and prosecuting this defense in this case?

"A. Mr. Bonham was employed already, in the case (the former case) to represent the original petitioner (Pope.)

\* \* \* \* \*

"Q. What conversation did you have with Mr. Bonham with reference to filing for Mr. Powers? Was Mr. Powers' interest in the answer you filed?

"A. After I talked to Mr. Powers on Sunday morning, I went back and told Mr. Bonham that Mr. Powers was going to call John McCampbell (who had previously filed an answer for Powers) and that he wasn't going to represent him, and he wanted us to represent him.

\* \* \* \* \*

"Q. After that conversation, did he tell you to go ahead and handle it to a conclusion?

"A. He did.

\* \* \* \* \*

"Q. Mr. Pope, Mr. Chandler asked you \* \* \* if you told him that the interest of Mr. Powers would be the same as Mr. Mireur—the judgment provides that Mr. Mireur was to have 1/32nd of the royalty and the remaining 1/32 was to be owned by you individually, you as trustee, and J. D. Powers?

"A. Yes, sir. * * *

"A. Mr. Powers and myself discussed the whole matter before the suit was ever filed. Before my original suit was ever filed. And we made attempts often to settle with you. * * *

"A. The form of the judgment was not discussed with Mr. Powers but the settlement was discussed with Mr. Powers often. He knew there was a serious question, and we discussed it, whether he had 1/256ths interest of the royalty or a straight lease, and we were trying to negotiate a settlement that would make the settlement as he and Mireur understood it. They thought that language was sufficient to give each of them a 1/32nd in the royalty, but the language, under my interpretation of it, was my advice to Mr. Powers, and his assent to it, that it didn't give them that right, and he was interested in making the same settlement I made, and he told me that Sunday morning, to go ahead and make the settlement and he would leave it to me."

The above excerpts disclose the nature of the testimony upon which the trial court acted in deciding the issue of Pope's authority. No allegation of wrong doing or fraud on Pope's part in procuring entry of the judgment was made other than his alleged unauthorized action. About fifteen days after it was entered Powers, according to his own statement, read that part of the judgment showing "distribution of my royalty." The judgment was entered on October 21st. The term of court ended the 28th of that month. The present suit was not filed until March following. The wrongful act alleged by Powers is that Pope in procuring the judgment acted as attorney for Powers when he was unauthorized to do so. The court found for Pope on this issue, finding specifically that "Powers filed answer * * * and was represented, in turn, by Hon. Jno. S. McCampbell, and, succeeding him, by Hon. W. E. Pope through H. S. Bonham."

■ It is immaterial so far as the question of whether the court erred in setting aside the judgment is concerned that it was set aside only to the extent that it awarded an interest to Pope, and not in its entirety. It appears from what has been stated that the case is one in equity to set aside a former judgment for alleged fraud in its procurement. It is in essence a bill of review and is governed by the law applicable to such proceedings. The material consideration in this connection is that unless the setting aside of the judgment was grounded upon the alleged wrongful action of Pope, no ground existed for setting it aside, in whole or in part. Winters & Mutual Aid

Ass'n. No. 2 v. Reddin (Com. App.), 49 S. W. (2d) 1095; Mann et ux v. Risher, 131 Texas, 498, 116 S. W. (2d) 692. The judgment was declared void to the extent stated, not upon the ground of fraud in its procurement, but upon the ground that the pleadings were not sufficient to support the award of interest decreed to Pope. It is Pope's contention—and the writ was granted upon the assignment presenting the contention—that inasmuch as the judgment sought to be set aside was an agreed, or negotiated, judgment, it became unimportant that the pleadings may have been insufficient to support the judgment had the case been a contested one. The contention is correct. See authorities cited by the Court of Civil Appeals, including Laird v. Thomas, 22 Texas 276 and Lessing v. Cunningham, 55 Texas 231. See also Duke v. Gilbreath (wr. ref.), 10 S. W. (2d) 412. The trial court in the former suit had jurisdiction of the subject matter of the suit and the parties, including Powers. His answer had been filed by Pope's procurement and was before the court signed by Bonham. The court upon conflicting evidence made his finding, as above stated, upon the issue of Pope's authority to negotiate the judgment. In the light of the record it is immaterial that Pope did not plead in confession and avoidance concerning the sufficiency of the pleadings. It is not necessary to the validity of an agreed judgment arrived at through compromise of the parties, that the pleadings be such as would be required to support a contested judgment. In Lessing v. Cunnningham & Hardee, supra, the court says:

"But, independently of this, it has been decided by this court, that although the pleadings do not set forth a cause of action which would on a contest have authorized the judgment rendered, yet that this, even as to a married woman, would be waived by reason of the judgment having been by consent."

■ American Law Reports in annotating the subject thus expressed the general rule:

"It is generally held that provisions in judgments and decrees entered by consent of all the parties may be sustained and enforced, though they are outside the issues raised by the pleadings, if the court has general jurisdiction of the matters adjudicated." 86 A. L. R. 84.

The rule stated—and adhered to by the courts in this State—is in keeping with the policy which discourages within proper bounds a re-litigation of issues reasonably and fairly comprehended in the suit.

It is apparent from what has been stated that the Court of Civil Appeals erred in affirming the trial court's judgment setting aside in part the former judgment without first determining that it had been fraudulently procured as alleged. It erred also, as did the trial court, in holding that the pleadings in the former suit were not ample to support the agreed adjudication complained of. The judgments of both courts are therefore reversed and set aside, and judgment is here rendered denying Powers the relief prayed for and decreeing the judgment in the former suit to be a valid and subsisting judgment.

Opinion adopted by the Supreme Court, October 26, 1938.

Rehearing overruled November 30, 1938.