Fidel LEAL et ux., Appellants,

v.

Narciso CORTEZ et al., Appellees.

No. 1312.

Court of Civil Appeals of Texas, Corpus Christi.

June 26, 1978.

H. H. Rankin, Jr., Rankin & Kern, McAllen, for appellants.

Tony Martinez, Brownsville, for appellees.

## OPINION

BISSETT, Justice.

The question presented by this appeal is whether the trial judge rendered judgment in accordance with an agreement between the parties which was dictated into the record. Fidel Leal and wife, Magdalena Leal, brought this suit against Narciso Cortez and other named defendants, where, among other things, they sought a recovery of certain lands. During the course of a jury trial all parties announced in open court that they had reached a settlement of the lawsuit. The terms of the settlement were then dictated into the record and the jury was discharged. Several months later a dispute arose between the parties as to whether a certain promissory note was to be made payable to Gloria Leal Cortez, as insisted by plaintiffs, or to the Cortez Trust, as contended by defendants. Following a hearing relating to the sole issue in disagreement, judgment was rendered that the note be made payable to the Cortez Trust. Plaintiffs have appealed.

Two points of error are brought forward. Plaintiffs contend that the trial court erred: 1) in rendering judgment when neither they nor the defendants mutually agreed upon all the terms of the judgment. 2) in not rendering a judgment which conformed to all of the terms of the agreement. They ask that the judgment of the trial court be reversed and the cause remanded, or, in the alternative, that the judgment be reversed and judgment rendered in accordance with the settlement agreement as the same appears in the record.

Rule 11, T.R.C.P., provides:

"No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."

■ In a judgment by consent, the terms must have been definitely agreed upon by all parties, and either reduced to writing, signed by all parties and filed among the papers of the case, or made in open court and dictated into the record. *McIntyre v. McFarland*, 529 S.W.2d 857 (Tex.Civ.App.— Tyler 1975, no writ); *Behrens v. Behrens*, 186 S.W.2d 697 (Tex.Civ.App.—Austin 1945, no writ).

■ It is absolutely essential that the parties themselves agree upon all the terms, provisions and conditions of the agreed settlement; the trial court has no power to supply terms, provisions or conditions not previously agreed to by the parties; and the trial court is without authority to render an agreed judgment that does not fall strictly within the terms of the agreement dictated into the record by the parties themselves. *Matthews v. Looney*, 123 S.W.2d 871 (Tex.Com.App.1939, opinion adopted); *Pope v. Powers*, 132 Tex. 80, 120 S.W.2d 432 (Tex.Com.App.1938, opinion adopted); *Wyss v. Bookman*, 235 S.W. 567 (Tex.Com.App.1921, opinion adopted); *Farr v. McKinzie*, 477 S.W.2d 672 (Tex.Civ.App. —Houston [14th Dist.] 1972, writ ref'd n. r. e.). Further, it is not sufficient that a party's consent to the agreed judgment may at one time have been given; consent must exist at the very moment the trial court undertakes to make the agreement the judgment of the court. *Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288 (1951); *Wilmer-Hutchins Independent Sch. Dist. v. Blackwell*, 529 S.W.2d 575 (Tex.Civ. App.—Dallas 1975, writ dism'd).

In the case at bar, on the morning of April 13, 1977, during the trial before the jury, Mr. Hollis Rankin, Jr., counsel for plaintiffs, and Mr. Tony Martinez, counsel for defendants, announced that they had reached a settlement of all matters in dispute. The trial judge then instructed counsel for the parties to dictate into the record the terms of settlement. This was done. It was agreed by both Mr. Rankin and Mr. Martinez, who represented to the court that each had full authority from his respective clients to settle the suit, that Gloria Leal Cortez was to be conveyed as her sole and separate estate free and clear of all indebtedness approximately 100 acres of land, and the remainder of the lands in dispute was to be conveyed by the Cortez Trust to the plaintiff Fidel Leal for the total consideration of $130,000.00, to be paid $13,000.00 in cash and the execution and delivery of a note for the remaining balance of $117,-000.00, to be paid in 15 equal annual installments, with interest at 7½% per annum; it was further agreed that a second lien on the land to be conveyed by the Cortez Trust to Leal "will be given on this land to Gloria Leal Cortez as her sole and separate property to secure this."

A short time after the agreement was dictated into the record, and before the jury was discharged, counsel advised the trial court that they had decided to change some of the terms of the original agreement of settlement. The following statements were then dictated into the record:

"MR. RANKIN: The agreement that we have heretofore dictated is the same with the exception that the property will be conveyed to the Cortez Trust.

MR. MARTINEZ: All right. The property previously described as the property going to Gloria Leal Cortez.

MR. RANKIN: The hundred-acre tract.

MR. MARTINEZ: Right. Shall remain in the Cortez Trust; either way, as we see fit to do.

MR. RANKIN: I would prefer to deed it.

MR. MARTINEZ: As you wish. It shall be deeded to the trust.

THE COURT: All right, Gentlemen, have you recited the amendment in the agreement now?

MR. RANKIN: Yes, sir.

THE COURT: Now, do I understand now that as amended the agreement now comprises the settlement entered into by all parties?

MR. RANKIN: That is correct, Your Honor.

MR. MARTINEZ: Yes, sir.

THE COURT: And that you have settled all your differences?

MR. RANKIN: We have settled the differences. The only change was that the hundred acres is to be deeded directly to the Cortez Trust.

THE COURT: And the necessary instruments will be executed by all parties by agreement to effect the agreement, the settlement; is that correct?

MR. RANKIN: Yes, Your Honor.

MR. MARTINEZ: Yes, Your Honor.

THE COURT: Any reason why the jury should not be discharged?

MR. RANKIN: No, Your Honor.

MR. MARTINEZ: No, Your Honor."

Whereupon, the jury was discharged. Later, and before judgment was rendered, a dispute arose with respect to the identity of the payee of the note. Plaintiffs contended that the payee, under the terms of the agreement, was Gloria Leal Cortez. Defendants contended that all parties to the original agreement, as amended, agreed that the Cortez Trust was to be the named payee. On September 26, 1977, a hearing was had, wherein the following statements were made:

"THE COURT: All right, Gentlemen, the Court set a hearing for today with respect to an agreement that had been entered into while a jury was waiting in this cause, and I will hear from you.

What seems to be your differences, Gentlemen?

MR. MARTINEZ: Your Honor, on behalf of Dr. Cortez, I guess we tried this way back in April, but since that time Mr. Rankin had submitted to me a proposed judgment in this cause in accordance with our agreement and, obviously, there was a discrepancy in understanding exactly what was meant or said back on April the 13th of 1977 with regard to a note for a hundred and thirty thousand dollars.

It was my understanding and the way that I read the notes of the court reporter from that time that the note was to be payable to the Cortez Trust, and the Cortez Trust would, in turn, deed the properties over to Mr. and Mrs. Leal.

Mr. Rankin feels that the note was meant to have been to Gloria Leal Cortez, and that is our sole and only dispute that we have as of right now. And my client's understanding at that time was that it was going to go strictly to the Cortez Trust and he is staunch about the fact that it should so reflect in the judgment.

MR. RANKIN: Your Honor, my recollection of the record—and Your Honor has it before you—was that we dictated an agreement providing that certain land, roughly a hundred and one and a fraction acres and a note for a hundred and thirty thousand or a hundred and thirty thousand dollars payable $13,000.00 down and the balance over a period of years at a certain percent should be given to Gloria Cortez as her sole and separate estate, and certain other terms and conditions, and this was dictated into the record.

THE COURT: Yes. As I look at the recitations with which I have been favored now, and as I recall this situation, you gentlemen agreed that everything was going to go to Gloria Leal Cortez in her separate right.

MR. RANKIN: Yes, sir.

THE COURT: And that then a phone call was made in between and then the agreement was off.

MR. RANKIN: He said it was off.

THE COURT: And it came back because of the fact that the Defendant Narciso Cortez would not agree.

MR. RANKIN: That is right. Unless she agreed to convey to—

THE COURT: You then came back and returned and at that time Mr. Leal had taken ill the day before.

MR. RANKIN: Yes, sir.

THE COURT: And then everybody returned and said it would go to the trust.

MR. RANKIN: The land, Your Honor.

THE COURT: Well, as I noticed, the record only made reference to the land specifically.

MR. RANKIN: That is right, sir.

THE COURT: But I remember the holdup between the parties was the fact that there was a projection by which she was to receive everything in her separate right. This was disagreeable. And then they talked to Mr. Leal and you came back and said that—so the problem as between both parties appears to be as to whether a hundred thirty thousand dollars was a part of the land.

MR. RANKIN: That is right.

THE COURT: I will give you one of two choices: I will declare a mistrial and we'll start trying this case again, or I will rule on the motion for a verdict from the evidence I heard in the case.

There was perjury in this case, my recollection is. I will give you one of two choices.

MR. RANKIN: Your Honor, let me talk to my clients and I will give you a—

THE COURT: Go ahead and discuss it, but I was very displeased by the fact that there was perjury."

After a short recess, the hearing continued, and the following statements were made:

"THE COURT: All right, Gentlemen, I will hear you.

MR. RANKIN: All right, Your Honor. For the plaintiffs, as I understand, the Court said that he would declare a mistrial or the Court would enter a judgment in accordance with his understanding of the agreement, and we are prepared for the Court to enter a judgment in accordance with the agreement as it was made and appears in the record.

THE COURT: Very well. Both sides ready, Gentlemen?

MR. MARTINEZ: Yes, sir.

THE COURT: Both sides ready?

MR. MARTINEZ: Yes, sir.

MR. RANKIN: Yes, sir.

THE COURT: All right. It is my opinion from all of the circumstances that took place at that time that it was the intention of the parties that all of the matters go into the Cortez Trust.

That is my opinion, Gentlemen, and I am going to so rule."

A judgment was then rendered which stated that the parties "had reached an agreement and settlement of this lawsuit", wherein the said 100 acres "is to be conveyed" to the Cortez Trust, and the Cortez Trust will convey certain described lands to plaintiffs, and that "plaintiffs shall give defendant Cortez Trust a note for $117,-000.00", payable in 15 equal annual installments, "and further the sum of $13,000.00 should be paid to defendant Cortez Trust by plaintiffs".

It is plaintiffs' position that in the original agreement of settlement, it was agreed by all parties that the 100 acres would be conveyed to Gloria Leal Cortez free and clear of liens and as her separate property and estate and that the remaining lands (544 acres) would be conveyed by the Cortez Trust to Fidel Leal; and, also, that $13,-000.00 in cash was to be paid to Gloria Leal Cortez and a note in the amount of $117,-000.00 was to be executed to her as payee, which was to be secured by a second lien on the 544 acres. They admit that the original agreement was amended so as to provide that the 100 acres would be conveyed to the Cortez Trust instead of to Gloria Leal Cortez, but say that this was the only change made by the amendment. They further contend that at the hearing on September 26, 1977, that they agreed to the rendition of a judgment in accordance with the agreement as it was made and appears in

the record, and did not agree to a rendition of judgment based on the trial judge's interpretation of the agreement.

The original agreement does not specifically provide that the note in question shall be made payable to Gloria Leal Cortez. With respect to the original agreement, all that was said concerning any deferred consideration for the transaction was:

> "[t]he total consideration will be $130,-000.00, $13,000.00 cash, the balance in 15 equal installments, with interest at 7½ per cent per annum, and a second lien will be given on this land to Gloria Leal Cortez as her sole and separate property to secure the payment of this."

The implication from the above-quoted statement is that the parties agreed that a note payable to Gloria Leal Cortez would be executed. Further, after the statement was dictated into the record, counsel for both plaintiffs and defendants, in the initial settlement agreement, used the word "note" in their discussions clarifying some of the terms of settlement, and agreed that the "note" would be an "on or before note" which would contain a "prepayment clause". No mention of the note was made when the agreement was amended.

We tend to agree with plaintiffs' contention that the trial court, in rendering judgment, failed to follow the final agreement made by the parties. Statements by counsel for each side have already been delineated. The amendment to the initial settlement did not refer to the note in question. The amendment affected only the disposition of the 100 acres. This is made clear by the last part of Mr. Rankin's statement, which was not contradicted by Mr. Martinez, when he represented unto the trial court:

> "We have settled the differences. The only change was that the hundred acres is to be deeded directly to the Cortez Trust."

After the trial court told the parties that they had a choice of either a mistrial or the rendition of judgment "from the evidence I heard in the case", Mr. Rankin said:

> "[w]e are prepared for the court to enter a judgment in accordance with the agreement as it was made and appears in the record".

■ There was no agreement by counsel for plaintiffs to be bound by the judgment of the trial court according to the trial court's understanding of the settlement terms. The court below had no power to alter the agreement or supply additional terms; it only had the power to put the agreement as made by the parties themselves into judgment form. The trial court may not enter a valid consent judgment when consent of one of the parties is lacking. *Burnaman v. Heaton*, supra. A judgment by agreement must fall strictly within the stipulations and agreements of the parties. *Edwards v. Gifford*, 137 Tex. 559, 155 S.W.2d 786, 788 (1941). Where the trial court undertakes to make an agreement of the parties the judgment of the court, and consent is lacking in the case, the judgment of the trial court must be reversed and the cause remanded for a new trial. *Carter v. Carter*, 535 S.W.2d 215, 217 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). Accordingly, we sustain plaintiffs' first point of error.

The circumstances suggest that the parties were not in agreement as to the identity of the payee of the note in question. It is apparent that both defendants' counsel and the trial judge were under the impression that the settlement agreement, as finally reached, provided that the note would be payable to the Cortez Trust. It is likewise apparent that plaintiffs' counsel was under the impression that the final settlement provided that the note would be made payable to Gloria Leal Cortez.

■ We hold that the judgment was not in accordance with the agreement of the parties which was dictated into the record. Plaintiffs' second point is sustained.

■ An argument can be made that we should reverse the judgment of the trial court with respect to the note in question. However, we do not believe that we should do so under the record here presented. Since it is evident that there was an honest

misunderstanding between the parties, we believe, and so hold, that the ends of justice would be better served by a reversal and remand of the case for a new trial. See: *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex. Sup.1972); *National Life and Accident Insurance Co. v. Blagg*, 438 S.W.2d 905 (Tex. Sup.1969).

REVERSED and REMANDED.