Gene GUYNN, Appellant,

v.

CORPUS CHRISTI BANK & TRUST, Appellee.

No. 1360.

Court of Civil Appeals of Texas, Corpus Christi.

April 12, 1979.

Rehearing Denied May 10, 1979.

Anthony F. Constant, Carl C. Chase, Corpus Christi, for appellant.

Robert C. Wolter, Wood, Burney & Wolter, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

The question presented by this appeal is whether the Honorable Walter Loughridge (Retired), sitting as visiting trial judge in the 105th District Court, committed reversible error by rendering judgment in total disregard of a settlement agreement reached by and between the parties. The settlement was dictated into the record pursuant to Rule 11, Texas Rules of Civil Procedure. A somewhat detailed factual statement is helpful in order to place the case in its proper procedural context, and to understand the parties' appellate contentions.

Appellee Corpus Christi Bank & Trust (Bank) brought this suit to recover the unpaid balance due and owing on a promissory note, together with interest and attorney's fees (contractual), against defendants International Equipment & Service Company, Inc. (IESCO), the maker of the note, and Ralph W. Hardin, Jack L. Whitson, and Gene Guynn, guarantors of the note. The Bank alleged that defendant IESCO executed a promissory note dated July 5, 1974, payable to the Bank for the principal sum of $89,861.00 payable with interest on or before sixty days from the date of execution and that the note had been renewed and extended to become due and payable on December 4, 1974. The Bank further alleged that the note was secured by: (1) three separate guaranty agreements executed by Hardin, Whitson and Guynn; and 2) a security interest in certain described couplings; as well as 3) all of the corporate maker's accounts receivable. The Bank alleged that the collateral was seized after default and sold at a public sale for the sum of $30,000.00, leaving an unpaid principal balance as of October 17, 1975, of $66,-730.40.

The guarantors filed cross-actions seeking contribution and indemnity from each other and, in addition, from Claude E. Birge and Paul Emery, alleged shareholders and officers of IESCO, on the basis that Birge and Emery had agreed to share in equal portions any judgment recovered against the guarantors, Hardin, Whitson or Guynn.

The guarantors also filed a counterclaim seeking, in addition to other relief, damages from the Bank because the Bank had allegedly sold the collateral for an unreasonable price. The Bank amended its pleadings to name Emery and Birge as additional defendants, seeking to claim, as a third party beneficiary, the benefits of any agreement among the defendants concerning liability for the payment of the debts evidenced by the note to the Bank.

Defendant Paul Emery did not answer and did not appear at the trial. The Bank, IESCO and all the individual defendants appeared and, through their attorneys of record, announced they had reached a settlement agreement disposing of some of the issues in the lawsuit. The following terms of the settlement were then dictated into the record:

> (Attorney for appellee Bank): ". . . that the Defendant Whitson and the Defendant Hardin and the Defendant Guynn have agreed to pay Corpus Christi Bank and Trust sixty thousand dollars cash on or before January 18 at five o'clock P.M. at Corpus Christ, Texas. In consideration for the bank not further asserting its claims against them severally or jointly upon the note dated July 5, 1974, and for the same consideration to the bank, the Defendants Whitson, Guynn, and Hardin do not pursue any of their defenses, affirmative or negative, in their pleadings against the claims of Corpus Christi Bank and Trust, and the sixty thousand dollar settlement with those three guarantors would be the extent of their liability as to principal, interest, and attorneys' fees, and we didn't discuss court costs, but we won't be that disturbed on it, and it is all conditioned on that amount of money in cash or its equivalent, as approved by me, being in the bank's possession as the Court has suggested at five o'clock on January 18, 1978.

> \*    \*    \*    \*    \*    \*

> The bank, in addition to that, will keep the couplings that they bid in the collateral for thirty thousand dollars, which credit has been allowed on the note, which would make the equivalent of receiving ninety thousand dollars if the couplings are worth thirty, which is highly speculative in my opinion, but that's part of the consideration, and, further, as I understand it, those three Defendants would not contest the introduction of the promissory note, security agreement, and all written instruments relating to the bank's claim."

After the agreement was dictated into the record, the trial judge asked each party to the agreement whether or not he understood what had been dictated and whether the terms of the agreement were agreeable and acceptable. All of the parties responded affirmatively.

Thereafter, the attorneys for the respective parties requested Judge Loughridge to postpone the jury portion of the trial on the remaining issues in the case for two days until the due date of the guarantors' settlement payment so that the cause could be tried in toto if the guarantors failed to raise the cash settlement payments. The trial judge refused. The attorneys for the respective parties then proceeded to determine what issues in the lawsuit remained for trial. The parties agreed that it remained for the Bank to prove up its prima facie case against IESCO and the defaulting defendant Emery, and that this part of the case would be before the trial judge sitting without a jury. The remainder of the issues, (as to whether there was to be contribution and indemnity between the various parties), would be tried to a jury.

The Bank then proceeded to present its evidence, including testimony that the principal and interest outstanding and unpaid on the note amounted to $76,680.69 as of the hearing date. The guarantors did not object to the Bank's evidence and did not present any evidence in support of their affirmative defenses against the Bank, all in accordance with the settlement agreement. At the close of the Bank's evidence, the trial judge stated:

> "The Court will grant you judgment against the corporation for seventy-six

thousand, six hundred, eighty dollars, sixty-nine cents plus ten per cent attorneys' fees, and against Mr. Emery for a like amount."

A discussion then ensued among the parties and the trial judge concerning the remaining issues to be tried before the jury. The record reflects some confusion as to the nature of the Bank's participation, if any, in the remainder of the case. The defendant guarantors had pled an agreement among themselves plus Birge and Emery to share in the obligations of IESCO in the event of a default. The Bank, on the other hand, sought some affirmative relief from Birge and Whitson because the Bank had pled that it was entitled to receive the benefits of any agreement between the parties under a third party beneficiary theory. Toward the end of the courtroom discussion, the trial judge stated:

"You have an agreement dictated in the record, and it is enforceable, and the way to enforce it and get the bank out of the way of Mr. Birge is to go ahead and render judgment against these three men as guarantors on the amount proven up and then when you pay the sixty thousand dollars you can get a release and that lets the bank out and they can sit by and wait and see what you prove against Mr. Birge. They will ride your coattail on that feature of it. That is the way to solve it.

(Attorney for Bank): The Bank will so move, Your Honor.

(Judge Loughridge): If nobody is going to make the motion, the Court will do it on its own motion. Who are the guarantors, Guynn, Hardin, and Whitson? . .

(Attorney for Bank): Yes, sir, where is the posture of International Equipment and Service Company?

(Judge Loughridge): You have a judgment against them and Mr. Emery also.

(Attorney for Bank): For how much?

(Judge Loughridge): Whatever amount you proved up.

(Attorney for Bank): Okay, sir.

(Judge Loughridge): The judgment against the guarantors is the same amount you proved up.

(Attorney for Bank): Jointly and severally?

(Judge Loughridge): Surely. Now you can sit behind these three guys and get a jury panel in here. Those three are Plaintiffs, and Mr. Yarbrough (the attorney for IESCO) is Defendant.

(Attorney for Bank): And the bank has no strikes, no comments?

(Judge Loughridge): No, nothing to do but just ride their coattails.

(Attorney for Bank): And we are not a party to the case?

(Judge Loughridge): No, we got you out of it pretty slick."

After a jury was selected, evidence was submitted concerning whether or not there was an oral guaranty agreement among the five defendants. In response to a sole special issue, the jury refused to find that Hardin, Whitson, Guynn, Emery and Birge had mutually agreed that each of them would be equally responsible to each other for the note to the Bank. Thereafter, the trial judge entered a final judgment providing, in part, that:

"CORPUS CHRISTI BANK & TRUST have judgment against and recover of and from INTERNATIONAL EQUIPMENT AND SERVICE COMPANY, INC., a Texas corporation, RALPH W. HARDIN, GENE GUYNN, JACK L. WHITSON, and PAUL EMERY, jointly and severally, in the sum of $84,348.76 (being liquidated amounts of $76,680.69 unpaid principal and accrued interest to date hereof and $7,668.07 being collection (attorney's) fees equal to ten percent (10%) of the unpaid principal and interest owing) together with interest from date hereof on such $76,680.69 thereof until paid at rate of ten percent (10%) per annum and with interest on $7,668.07 thereof until paid at the rate of nine percent (9%) per annum."

The judgment did not mention the prior agreement which had been dictated into the record limiting the liability of the three

guarantors to the sum of $60,000.00. The judgment provided that the guarantors would have a judgment against each other for indemnity and contribution and against Paul Emery for indemnity and contribution. The judgment, however, denied the guarantors indemnity and/or contribution as to defendant Birge. The only party to appeal the trial court's order is guarantor Guynn.

In point of error two (original brief) and counterpoint two (reply brief), appellant contends, in effect, that the trial court erred when it arbitrarily and summarily granted a judgment against him in total disregard of the terms of the parties' settlement agreement entered into pursuant to Rule 11, Texas Rules of Civil Procedure. We agree.

Rule 11 provides as follows:

"No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as a part of the record, *or unless it be made in open court and entered of record.*" (Emphasis supplied).

■ In a judgment by consent, the terms must have been definitely agreed upon by all parties, and either reduced to writing, signed by all parties and filed among the papers of the case, or made in open court and dictated into the record. *Leal v. Cortez,* 569 S.W.2d 536 (Tex.Civ.App.—Corpus Christi 1978, no writ); *McIntyre v. McFarland,* 529 S.W.2d 857 (Tex.Civ.App.—Tyler 1975, no writ); *Behrens v. Behrens,* 186 S.W.2d 697 (Tex.Civ.App.—Austin 1945, no writ).

■ It is absolutely essential that the parties themselves agree upon all the terms and provisions of the agreed settlement. The trial court has no power to supply terms, provisions or essential details not previously agreed to by the parties. The trial court is without authority to render judgment which does not fall strictly within the terms of the agreement dictated into the record by the parties themselves. *Matthews v. Looney,* 132 Tex. 313, 123 S.W.2d 871, 872 (1939); *Pope v. Powers,* 120 S.W.2d 432 (Tex.Sup.1938); *Leal v. Cortez,* 569

S.W.2d 536, 538 (Tex.Civ.App.—Corpus Christi 1978, no writ). It is not sufficient that a party's consent to an agreed judgment may have been given at one time or another, but rather, the consent must exist at the very moment the trial court undertakes to make the agreement a part of the record and judgment of the court. *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288 (1951); *Leal v. Cortez,* 569 S.W.2d 536 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Wilmer-Hutchins Independent School District v. Blackwell,* 529 S.W.2d 575 (Tex.Civ.App.—1975, writ dism'd). Once the requisites of Rule 11, Texas Rules of Civil Procedure, have been satisfied, it is the ministerial duty of the trial court to then render judgment in strict accordance with the parties' agreement. See *Wright v. Allstate Insurance Co.,* 285 S.W.2d 376, 379 (Tex.Civ.App.—Dallas 1955, writ ref'd n. r. e.), and authorities cited therein. It has been aptly stated that:

". . . the court would be entirely without authority to render any judgment other than that falling strictly within the terms of the stipulations. It was not for the court to determine whether the benefits to accrue from a particular stipulation might be had under some arrangement different from that stipulated. The powers of the judge, exercised by virtue of agreement of the parties, extend, we think, to entering only such judgment as was a literal compliance with the agreement." *Wyss v. Bookman,* 235 S.W. 567, 569 (Tex.Com. App.1921, jdgmt. adopted; holding approved).

■ In this case, the parties entered into a settlement agreement whereby the liability of the guarantors of the note upon which the Bank sought judgment was fixed. The agreement was recited into the record and, thereafter, each party, in open court, stated and agreed that he understood the provisions of the settlement and that such provisions were agreeable to him.

After the settlement agreement was dictated into the record, remaining discussions concerned the severable issues which re-

mained to be tried and the proper alignment of the parties in that contested portion of this suit. Nowhere in the record is there an express repudiation of the agreement by any party. The trial judge, in attempting to determine the remaining issues, again specifically recognized the validity and binding effect of the parties' agreement.[1]

The evidence which was introduced by the Bank to prove its prima facie case was only against the corporation and the defaulting defendant (Emery). Nevertheless, in total disregard and in direct contravention of the settlement agreement, the trial court rendered a joint and several judgment against the guarantors for an amount that exceeded by several thousand dollars the settlement agreed to by the parties. The trial judge's later explanation for his version of the judgment entered was to the effect that the Bank should get a judgment for the full amount against the three guarantors jointly and severally, and if the guarantors paid the amount of the settlement two days later, the Bank could release them. The effect of the judge's version would save the Bank the trouble of bringing suit on the contractual settlement judgment if the guarantors defaulted. This was obviously a better settlement for the Bank, but it wasn't the agreement between the parties. We are of the opinion that the trial judge exceeded his authority and acted in total disregard of the settlement agreement which was binding on the parties and binding on the trial court.

We further disagree with the Bank's contention that the judgment which was finally entered by the trial court was of itself a valid consent judgment. The Bank contends that appellant Guynn impliedly agreed to the terms of the judgment that was entered because, when the judge pronounced his decision in open court, Guynn did not object. It is equally consistent with our above ruling that, in order for the judgment that was entered by the trial judge to be considered as a valid consent judgment, the requirements of Rule 11, Texas Rules of Civil Procedure, must, again, be strictly followed. This was not done. The parties did not reach a second compromise agreement. There was no additional agreement in writing or stipulations dictated into the record. In addition, none of the parties had repudiated the settlement agreement at the time the judgment was announced in open court or at any time thereafter. No one on appeal contends that he did not agree with the settlement agreement as dictated into the record. A party cannot be bound without his express consent to a settlement agreement.

It is apparent to us from a complete reading of the record that the trial judge, (although he was aware of the settlement agreement and was of the opinion that it was binding), nevertheless took it upon himself to determine what the best interests of the parties were to be and to attempt to settle the suit to his own satisfaction. This conduct is not permissible and cannot be upheld on appeal.

1. For example, the following exchange occurred after the trial judge had orally pronounced judgment in favor of the Bank against only IESCO and Emery, and prior to the selection of the jury:
"(Attorney for Bank): The bank's position is still not clear in its Counsel's mind, Your Honor. In the event settlement is not reached, we have no issue left to raise?
(Judge Loughridge): I am assuming the settlement will be reached and that it is enforceable. It is dictated into the record and is enforceable and agreed to by all parties, and it is an enforceable settlement. If they don't get the money by Wednesday afternoon, you can sue them and get judgment against them on it.
(Attorney for Bank): That day?
(Judge Loughridge): I don't know how fast your courts work down here. I can tell you if it was in Bexar County it would be within five months. We try cases up there in five months from the date they are filed, most of them. You have an enforceable agreement, Counsel, and you just sit behind these guys and wait and see.
(Attorney for Bank): I understood at one point you said if they did not, then Thursday you gave me judgment for the seventy-six thousand dollars plus attorneys' fees.
(Judge Loughridge): *I didn't say that.*
(Attorney for Bank): That is the . . .
(Judge Loughridge): The Court didn't say that, and you have reached a judgment only against Mr. Emery and the corporation."

**908**

As a general rule, where one party appeals from a judgment, a reversal as to him will not justify a reversal against other non-appealing parties. This rule, however, does not apply in cases where the respective rights of the appealing and non-appealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment where a part thereof must be reversed. See *Lockhart v. A. W. Snyder & Co.*, 139 Tex. 411, 163 S.W.2d 385 (1942); *Richards Manufacturing Company v. Aspromonte*, 557 S.W.2d 543 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Bates v. First National Bank of Waco*, 502 S.W.2d 181 (Tex.Civ.App.—Waco 1973, no writ); *Dairyland County Mutual Ins. Co. v. Texas v. Martinez*, 484 S.W.2d 785 (Tex.Civ.App.—El Paso 1972, writ ref'd n. r. e.). In this case, the trial court exceeded his authority by disregarding an otherwise valid settlement agreement between the parties.

Since the original agreed settlement is now impossible to perform because of the date limitation contained therein, we have no other recourse than to reverse the cause as to the Bank and as to the three named guarantors (Hardin, Whitson and Guynn) for a trial on the merits of the parties' respective causes of action between themselves.

The judgment of the trial court is reversed and the cause is remanded.