TRAVELERS INSURANCE CO. and Jack H. Reinhardt, Appellants,

v.

Marion WILLIAMS et al., Appellees.

No. 1621.

Court of Civil Appeals of Texas, Corpus Christi.

June 30, 1980.

Ferriel C. Hamby, Jr., James H. Denison, Jr., Adams, Graham, Jenkins, Graham & Hamby, Harlingen, for appellants.

Gordon L. Briscoe, Moises Vela, Vela & Vela, E. R. Fleuriet, Wiley, Hale & Fleuriet, Harlingen, for appellees.

## OPINION

NYE, Chief Justice.

The major question in this appeal concerns the validity of a purported "nunc pro tunc" judgment entered on August 31, 1979, for the alluded purpose of correcting "clerical errors" contained in an original "agreed judgment" previously entered on December 15, 1977.

The original suit in the trial court involved claims for damages and for uninsured motorist benefits arising out of the collision involving two cars, one driven by Jack H. Reinhardt and the other, by Sammy L. Genovese. Reinhardt was covered by uninsured motorist insurance as well as liability coverage through Travelers Insurance Company. Genovese was not covered by insurance. Killed in the accident were three passengers in the Reinhardt vehicle, Karen G. Williams, Aubrey Ray Carroll and Jimmy Lee Wilkerson. Williams was survived by a husband and three minor children, Carroll was survived by a wife and two children, and Wilkerson was survived by a wife and three minor children.

The Williams survivors and the Carroll survivors sued Reinhardt and Genovese. Thereafter, Genovese filed a cross action for damages against Reinhardt and Reinhardt filed a third party action against Genovese for indemnity or, in the alternative, for contribution. The Wilkerson survivors intervened suing Travelers Insurance Company seeking to recover uninsured motorist insurance benefits. Later the original plaintiffs (Williams and Carroll survivors) named two additional defendants, Transamerica Insurance Company of Texas and Westchester Fire Insurance Company, seeking from them uninsured motorist insurance benefits under policies issued to Reinhardt covering other vehicles he owned.

On December 15, 1977, an eleven page judgment was signed and entered by the then presiding trial judge, the Honorable William Scanlan. It stated in part, the following:

". . . and came all parties [previously named] by and through their attorneys of record and announced to the Court that they had agreed to compromise and settle all matters at issue and in dispute between them; . . . .

Thereafter, and after the Guardians ad Litem appointed for the respective Minors had had ample time to prepare and had announced ready for trial, and after all other parties announced ready, the Court proceeded to hear evidence of the parties and the Compromise Settlement Agreement."

After these recitations were made, the terms of the compromise agreement were set forth in detail, including provisions detailing recovery of specific agreed amounts by the plaintiffs and intervenors. The signature of each attorney, party and guardian ad litem appears at the end of the judgment (almost 2 pages of signatures) under the notation, "AGREED TO AND APPROVED:"

A year and six months later, the Wilkerson survivors (intervenors in the original suit) filed a "Motion to Correct Clerical Errors in Judgment" alleging that the intervenors had sought recovery against Travelers Insurance Company only and that "[t]hrough clerical error the Judgment herein recites that Intervenors 'should take nothing against [defendant] Sammy L. Genovese' and further recites that [defendant] Jack H. Reinhardt 'Be . . . released, acquitted and discharged of and from any and all liability to . . . Intervenors . . .'" Attached to the motion was a "corrected judgment" intervenors requested the Honorable Raul A. Gonzalez to approve and enter. Judge Scanlan had retired during the interim.

The attorney who represented Jack H. Reinhardt and Travelers Insurance Company during the proceedings culminating in the agreed judgment appeared at the hearing and opposed intervenors' motion. The statement of facts of such hearing which is before us reveals that intervenors' attorney took the position that the agreed judgment contained the following four clerical errors which warranted correction nunc pro tunc:

1) The agreed judgment recited that Mrs. Wilkerson, the mother of the decedent Wilkerson, "take nothing against the Defendants."

2) The agreed judgment recited that "Intervenors take nothing against Sammy L. Genovese."

3) The agreed judgment recited that Reinhardt and the named insurance companies "are released, acquitted, and discharged from any and all liability to" the intervenors.

4) The judgment contained no recital that Travelers had paid the agreed sums to the intervenors.

Intervenors' attorney argued, in substance, that the above recitals were incorrectly inserted into the agreed judgment because Wilkerson's mother had merely filed a declaimer of interest in the cause and that the intervenors had sued only Travelers Insurance Company. Therefore, intervenors proposed that the judgment should be corrected to reflect the true alignment of the parties.

At the hearing the attorney representing Reinhardt and Travelers argued that there were no mistakes in the agreed judgment. The settlement resulted only after months of negotiations among all parties involved. The attorney stated that a copy of the judgment had been prepared and circulated among all of the attorneys representing the various parties. He stated that intervenors' attorney had requested some changes which were then made prior to the time the final draft had been drawn, and that the original judgment represented the full agreement reached by all of the parties as evidenced by their signatures. The trial judge entered a new judgment "correcting clerical errors." The order recites in substance, that such corrections are warranted because intervenors sued only Travelers Insurance Compa-

ny (in the original petition) and did not sue the other defendants.

Reinhardt and Travelers Insurance Company appeal bringing in effect four points of error challenging the trial court's action in entering a nunc pro tunc order: 1) the errors, if any, were judicial and not clerical; 2) there is no evidence in the record that the original judgment as entered is not in conformity with the judgment rendered; 3) appellees (intervenors) failed to meet their burden to establish a clerical error in the nunc pro tunc judgment; and 4) there is insufficient evidence that an error or mistake was made warranting correction by nunc pro tunc order.

Appellees, on the other hand, contend that the order nunc pro tunc is proper because, at the hearing, an issue of fact was presented as to whether there had been an actual agreement among the parties and the present trial judge properly resolved such issue of fact in their favor. Appellees do not dispute that the original judgment entered was an agreed judgment but contend that the original judgment that was entered failed to conform to the parties' agreement. We disagree with this argument.

The original judgment that was entered on December 15, 1977, appears to be a valid agreed judgment, reduced to writing, signed by all of the parties and their attorneys, signed and approved by the trial judge and filed of record in the case. The record before us also contains a copy of the docket entry of December 15, 1977, which states, in relevant part as follows:

"Compromise settlement approved and, accordingly, Plaintiffs and Intervenors granted Judgment against Defendants all as per order on file. (Wm. Scanlan)"

The judgment recites, in substance, that the parties themselves were questioned concerning the agreement which had been reached.

It is well settled that the parties must agree upon the provisions of a settlement agreement, and the court has no power to supply terms, provisions, or essential details not previously agreed to by the parties. *Matthews v. Looney*, 132 Tex. 313, 123 S.W.2d 871, 872 (1939); *Guynn v. Corpus Christi Bank & Trust*, 580 S.W.2d 902, 906 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Leal v. Cortez*, 569 S.W.2d 536, 538 (Tex.Civ.App.—Corpus Christi 1978, no writ). See also *Williams v. Hollingsworth*, 568 S.W.2d 130 (Tex.Sup. 1978); Rule 11, Texas Rules of Civil Procedure. Such a judgment which fails to conform to the settlement agreement will not be enforced. See *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292 (Tex.Sup. 1976).

The record does not show that intervenors' consent was lacking at the time the first judgment was entered. Appellees also failed to show that the agreed judgment as entered was different than the parties' written agreed settlement.[1] The only "evidence" introduced at the second hearing

---

1. Although it is not needed for a proper disposition of this case, it is noteworthy that appellees have filed with this Court in support of their various contentions the statement of facts of the original hearing even though it was not introduced into evidence at the second hearing. In their brief they selected a portion of intervenor Mrs. Wilkerson's testimony to show that she did not agree to a take nothing judgment as to the other defendants. However, the appellees fail to quote the following passage from her testimony:

Q: "Mrs. Wilkerson, you understand if the Court approves this Judgment that as far as your cause of action and/or your children's cause of action against the insurance companies named in this suit will come to an absolute end?

A: "Yes, sir.

Q: "And you are asking the Court to approve this settlement?

A: "Yes, sir.

Q: "You understand, also that you have a cause of action independent of this against the uninsured motorist carrier of you own company?

A: "Yes, sir.

Q: "You understand that?

A: "Yes, sir.

Q: "Are you advising the Court at this time you are accepting this settlement because, as far as you are concerned, it is fair?

A: "Yes, sir.

Q: *And not because you are relying on collecting anything from other carriers?* (emphasis added)

A: "No."

was to the effect that intervenors only sued Travelers Insurance Company and that counsel for intervenors, although they had seen and approved the agreed judgment, failed to notice that it precluded further action by intervenors as to all the defendants.[2]

■ An agreed judgment is not open to attack on appeal on the ground that the undisputed evidence shows error in the decree. See *Alexander v. Alexander*, 373 S.W.2d 800 (Tex.Civ.App.—Corpus Christi 1963, no writ). A party who by agreement induces the trial court to enter judgment is thereafter estopped from denying its validity. *Campbell v. Campbell*, 362 S.W.2d 904 (Tex.Civ.App.—Austin 1962, error dism'd). Where the parties have reached an agreement, the trial court acts in a ministerial capacity in entering judgment. *Pope v. Powers*, 132 Tex. 80, 120 S.W.2d 432 (1938). In this type of situation, it is not necessary for the pleadings to support the judgment, and, assuming the court has jurisdiction, the decree cures every pleading defect and all other errors not going to jurisdiction. 4 McDonald, Texas Civil Practice, § 17.22, p. 108, n. 4 (1971).

■ The present judgment that is before us is not a proper nunc pro tunc judgment. After a judgment becomes final for purposes of appeal, only clerical errors in the entry of a judgment, previously rendered, may be corrected after the court's term by a nunc pro tunc judgment. Judicial errors may not be corrected. *Lone Star Cement Corporation v. Fair*, 467 S.W.2d 402, 405 (Tex.Sup.1971); *Mathes v. Kelton*, 569 S.W.2d 876 (Tex.Sup.1978); *Universal Underwriters Insurance Co. v. Ferguson*, 471 S.W.2d 28 (Tex.Sup.1971).

We hold that the trial court did not have jurisdiction to enter the nunc pro tunc order in question. Accordingly, judgment is here rendered that such order is in all things set aside.

REVERSED AND RENDERED.

2. The following are some of the relevant excerpts from the hearing on the nunc pro tunc order:

(Judge): "You are an experienced attorney in personal injury cases in long standing and good standing in this County. How could this error have been made?"

(Attorney for Intervenors): "I think, your Honor, everything in this except the amounts of money and who is getting the money is considered by the rest of us to be boiler-plate. Maybe that's a rash admission to make, but I think that is, really, basically, what happened. We had a bunch of lawyers in the room. We were all interested in seeing that each of our clients got the proper amount of money. The Guardians ad Litem were all concerned that there was a proper division of the proceeds. The judgment was circulated and everybody signed it and that was it."

\*　\*　\*　\*　\*　\*

(Attorney for Intervenors): "You know, the lawyers involved will just have to plead that they did a poor job of proofreading this judgment."