Byron A. DONZIS and Carmel Research, Inc., Appellants,

v.

Mark McLAUGHLIN and Tom McCarvill, Appellees.

No. 04–97–00489–CV.

Court of Appeals of Texas, San Antonio.

July 15, 1998.

Michael B. Lee, Greenberg, Peden, Sieg-myer & Oshman, P.C., Erik B. Walker, McCalanahan & Clearman, L.L.P., Houston, for appellant.

R. Laurence Macon, Katherine Compton, Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, for appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

HARDBERGER, Chief Justice.

Appellants, Byron A. Donzis ("Donzis") and Carmel Research, Inc. ("Carmel"), appeal a summary judgment order incorporating the terms of a draft settlement agreement. Donzis and Carmel filed separate briefs contending the trial court erred in granting the summary judgment because: (1) a material issue of fact exists as to whether the terms of the settlement agreement are more expansive than the terms of the Rule 11 Agreement; (2) the affidavit of Laurence Macon, an interested party, was not competent summary judgment evidence; (3) the summary judgment order should have incorporated the literal terms of the Rule 11 Agreement; (4) the Rule 11 Agreement was ambiguous, thereby raising a fact issue; and (5) a material issue of fact exists as to whether Donzis breached the Rule 11 Agreement. We reverse the summary judgment and re-mand the cause to the trial court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Appellees, Mark McLaughlin ("McLaughlin") and Tom McCarvill ("McCarvill"), sued Donzis, Carmel, Immudyne, Inc. ("Immudyne") and James D. Wood ("Wood") for various claims, and Donzis, Carmel, Immudyne and Wood responded with various counterclaims. On October 26, 1996, the parties entered into a Rule 11 Agreement, settling all their disputes, and the trial court approved the Rule 11 Agreement on December 13, 1996. A Settlement Agreement purporting to incorporate the terms of the Rule 11 Agreement was subsequently prepared by counsel for McLaughlin and McCarvill and circulated for signature. Donzis and Carmel refused to sign the Settlement Agreement.

On January 17, 1997, McLaughlin and McCarvill filed a motion for summary judgment. The trial court granted the motion and entered an order incorporating the terms of the Settlement Agreement.

## MOTION TO DISMISS

■ McLaughlin and McCarvill assert in their brief, as well as in their pending motions to dismiss, that this appeal should be dismissed because Donzis and Carmel have accepted the benefits of the judgment, thereby estopping them from attacking the judgment by appeal. McLaughlin and McCarvill contend that Donzis accepted the benefits of the judgment by offering his services to promote Immudyne products. McLaughlin and McCarvill further contend that Carmel accepted benefits by turning over the stock it owned in Immudyne in exchange for a $240,-000.00 promissory note and by seeking royalties on certain products under the definition of Licensed Technology contained in the summary judgment order.

■ In general, a party may not voluntarily accept the benefits of a judgment and attack it on appeal at the same time. *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950); *Aycock v. Pannill*, 853 S.W.2d 161, 163 (Tex.App.—Eastland 1993, writ denied). The general rule is based on estoppel, but it

is not without exception. *Carle,* 234 S.W.2d at 1004; *Aycock,* 853 S.W.2d at 164. If the reversal of the judgment on appeal cannot possibly affect the appellant's right to the benefit accepted, then the appellant may proceed with the appeal. *Carle,* 234 S.W.2d at 1004; *Aycock,* 853 S.W.2d at 164. A two-part test is applied to determine whether the exception is applicable: (1) could a reversal of the judgment possibly affect appellant's right to the benefits accepted; and (2) would the appellee be compelled to concede upon another trial that appellant has the right to retain those benefits regardless of the outcome of the litigation. *Carle,* 234 S.W.2d at 1004.

With regard to Donzis, he is not complaining of the portion of the summary judgment order that requires him to use his best efforts to make Immudyne a profitable venture and maximize sales. The summary judgment order incorporates the literal language of the Rule 11 Agreement with respect to this requirement. Even if this court determines that certain provisions of the summary judgment order were more expansive than the Rule 11 Agreement, the provision requiring Donzis to use his best efforts would not be affected, and Donzis would be required to comply with that term regardless of the outcome of the litigation. It is questionable whether Donzis's offer to provide services is the acceptance of a benefit, rather than the compliance with an obligation.

Carmel is also not complaining of the portion of the Rule 11 Agreement that requires Carmel to re-transfer its stock in Immudyne or that requires Immudyne to deliver a promissory note to Carmel. The summary judgment order incorporates the literal language of the Rule 11 Agreement in this respect, and the parties would be required to comply with that term regardless of the outcome of the litigation. With regard to the letter concerning the dispute over whether royalties are due on additional products based on the "expansive language of the Summary Judgment Order," a benefit may have been demanded in an effort to resolve the dispute, but there is no evidence that a benefit has been paid and accepted.

## STANDARD OF REVIEW

The general standard for reviewing a motion for summary judgment has been clearly established. The movant for summary judgment is first required to disprove at least one of the essential elements of each of the plaintiff's causes of action in order to prevail on summary judgment. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). This initial burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Id.* Any doubt is resolved in favor of the non-movant. *Id.*

## AMBIGUITY

■ In Donzis's fourth point of error, Donzis contends that the Rule 11 Agreement is ambiguous; therefore, its meaning is a question of fact. McLaughlin and McCarvill counter that the Rule 11 Agreement is not ambiguous but is worded so that it can be given a definite legal meaning.

■ A settlement agreement is a contract, and its construction is governed by legal principles applicable to contracts generally. *Nuno v. Pulido,* 946 S.W.2d 448, 451 (Tex.App.—Corpus Christi 1997, no writ); *Old Republic Ins. Co. v. Fuller,* 919 S.W.2d 726, 728 (Tex.App.—Texarkana 1996, writ denied). An unambiguous contract is to be construed by a court as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex. 1983); *Ortega–Carter v. American Intern. Adjustment Co.,* 834 S.W.2d 439, 442 (Tex. App.—Dallas 1992, writ denied). A contract is ambiguous if its meaning is uncertain or doubtful or it is reasonably susceptible to more than one meaning. *Coker,* 650 S.W.2d at 393–94. Whether a contract is ambiguous is a question of law to be decided by a court by looking at the contract in its entirety in light of the circumstances present when the contract was entered. *Id.* Only where a contract is first determined to be ambiguous

may the court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *National Union Fire Ins. Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *see also Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 147–48 (Tex. App.—Houston [1st Dist.] 1986, no writ)(affidavit regarding intent of parties to an agreement inadmissible if agreement determined to be unambiguous).

 The parties' dispute is centered on the use of the phrase "related technology" in section B of the Rule 11 Agreement.[1] Donzis and Carmel contend that the phrase is limited to the technology referenced in the existing license agreements, while McLaughlin and McCarvill read the phrase more expansively. A disagreement over the interpretation of a contract clause does not render the clause ambiguous. *Pitman v. Lightfoot*, 937 S.W.2d 496, 517 (Tex.App.—San Antonio 1996, writ denied). When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent from the agreement itself, not from the parties' present interpretation. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731–32 (Tex.1981). A contract is ambiguous only when, after the application of the proper rules of construction to the face of

the instrument, it remains reasonably susceptible to more than one meaning. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951); *Preston Ridge Financial Services Corp. v. Tyler*, 796 S.W.2d 772, 776 (Tex.App.—Dallas 1990, writ denied).

The Rule 11 Agreement refers to the existing license agreements with regard to the patents and related technology. Subparagraphs 3 and 4 of section B refer to the patents and related technology currently licensed to Immudyne and Carmel, respectively, and relate back to the license agreements. By referring to the related technology currently licensed to Immudyne and Carmel, the Rule 11 Agreement unambiguously restricts the reaffirmations and representations to the patents and related technology that are contemplated by the license agreements. We hold the Rule 11 Agreement is unambiguous and overrule Donzis's fourth point of error. Since the Rule 11 Agreement is not ambiguous, extraneous evidence was inadmissible to determine the meaning of the instrument. *National Union Fire Ins. Co. v. CBI Industries, Inc.*, 907 S.W.2d at 520; *see also Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d at 147–48 (affidavit regarding intent of parties to an agreement inadmissible if agreement determined to be unambiguous).

---

1. Section B of Rule 11 Agreement reads as follows:

B. PATENT TECHNOLOGY

1. Donzis and any Donzis owned or controlled entities, reaffirm that, as set forth in the license agreements between Donzis, Donzis Research, Inc. and Donzis Laboratories, Inc. and Carmel, Carmel is the sole and exclusive licensee worldwide for all patents currently licensed by said entities to Carmel, and shall be the sole and exclusive licensee for such patents and related technology and improvements on such patents and related technology.

2. Carmel reaffirms that, as set forth in the license agreements between Carmel and Immudyne, Immudyne is the sole and exclusive licensee worldwide for all patents currently licensed to Immudyne, and shall be the sole and exclusive licensee for such patents and related technology and improvements on such patents and related technology.

3. Donzis warrants and represents that, to the extent that Donzis owns any right, title or interest in the license agreement between Carmel and Immudyne, that Immudyne is the sole and exclusive licensee of all patents and related technology

currently licensed to Immudyne. Donzis further warrants and represents that, to the extent that Donzis owns any right, title or interest in the license agreement between Carmel and Immudyne, Immudyne shall be the sole and exclusive licensee of all improvements on patents currently licensed to Immudyne, and all related technology.

4. Carmel warrants and represents that, to the extent that Carmel owns any right, title or interest in the license agreement between Donzis, Donzis Research, Inc., Donzis Laboratories, Inc. and Carmel, that Carmel is the sole and exclusive licensee of all patents and related technology currently licensed to Carmel. Carmel further warrants and represents that, to the extent that Carmel owns any right, title or interest in the license agreement between Donzis, Donzis Research, Inc., Donzis Laboratories, Inc. and Carmel, Carmel shall be the sole and exclusive licensee of all improvements on patents currently licensed to Carmel, and all related technology.

5. Donzis, Wood and Carmel agree that they shall not compete with Immudyne, directly or indirectly, concerning any patents which fall within the scope of paragraphs 1–4 above.

Those portions of the affidavits of R. Laurence Macon and J. Brad Whitus addressing the parties' intent were inadmissible and should not have been considered by the trial court in reaching its decision.[2]

### "LICENSED TECHNOLOGY"

█ In Donzis's first and third points of error, and in each of Carmel's points of error, Donzis and Carmel contend that the summary judgment conflicts with the terms of the Rule 11 Agreement by its use of the defined term "Licensed Technology." McLaughlin and McCarvill assert that there is no contradiction between the terms of the summary judgment and the Rule 11 Agreement and that a variance in the terms of the two documents is permissible.

█ An agreed judgment which is based on a settlement agreement must be in strict or literal compliance with the terms of the settlement agreement. *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex.1976); *Arriaga v. Cavazos*, 880 S.W.2d 830, 833 (Tex.App.—San Antonio 1994, no writ). A trial court has no power to supply terms, provisions or conditions not previously agreed upon by the parties. *Tinney v. Willingham*, 897 S.W.2d 543, 544 (Tex.App.— Fort Worth 1995, no writ); *McLendon v. McLendon*, 847 S.W.2d 601, 610 (Tex.App.— Dallas 1992, writ denied); *Dodson v. Seymour*, 664 S.W.2d 158, 161 (Tex.App.—San Antonio 1983, no writ). If the terms of an agreed judgment conflict with the terms of the settlement agreement, the judgment will be unenforceable. *Clanin v. Clanin*, 918 S.W.2d 673, 678 (Tex.App.—Fort Worth 1996, no writ); *Tinney v. Willingham*, 897 S.W.2d 543 at 544; *Travelers Ins. Co. v. Williams*, 603 S.W.2d 258, 261 (Tex.Civ. App.—Corpus Christi 1980, no writ). If the discrepancy is the result of a clerical error, the appellate court may modify the conflicting term to conform to the settlement agreement. *McLendon v. McLendon*, 847 S.W.2d at 610. A judgment based on a judicial error must be reversed and remanded to the trial court for the entry of an agreed judgment that conforms to the terms of the parties' agreement. *Clanin v. Clanin*, 918 S.W.2d at 678; *McLendon v. McLendon*, 847 S.W.2d at 610.

The summary judgment defined Licensed Technology as follows:

Patent No. 4,138,479 "Process for Preparation of Immunopotentiating Agents from Components of Yeast Cell Wall Material"; Patent No. 4,891,220 "Method and Composition for Treating Hyperlipidemia"; and Patent No. 5,223,491 "Method for Revitalizing Skin by Applying Topically Water Insoluble Glucan" and any improvement, apparatus, composition, formula, formulation, method, process, procedure, technique, product, program, algorithm or related technology which incorporates any of the subject matter disclosed or claims in each or any of them, including but not limited to any application of Beta Glucan, in any form, for use in cosmetics and related products, human consumption or nutrition related products, or animal consumption or nutrition and related products.

Donzis and Carmel contend that this definition is more expansive than the technology referenced in the Rule 11 Agreement, which was limited to the technology set forth in the license agreements between the parties.

In order to determine whether the summary judgment conflicts with the terms of the Rule 11 Agreement, we must review the license agreements to determine the nature of the technology licensed. Donzis attached copies of two license agreements to his response to the motion for summary judgment. McLaughlin and McCarvill filed a reply attaching a third license agreement.

The first agreement, dated July 31, 1986, is entered into between Carmel and Immudyne and relates to patent 4,138,479. In the recitals of the agreement, Carmel represents and warrants that it possesses the exclusive right to make, use and sell the invention claimed in U.S. Patent No. 4,138,479 (defined as the "'479 patent"), as well as certain rights in

---

**2.** Donzis's second point of error contends the trial court erred in granting the motion for summary judgment because Macon's affidavit was not credible and is contradicted. Since Macon's affidavit should not have been considered because the Rule 11 Agreement is unambiguous, we do not find it unnecessary to reach Donzis's second point of error.

and to various technical information, know-how, expertise and trade secrets (defined as "licensed technology"). Carmel grants to Immudyne "an exclusive sublicense to make, use and sell the invention of the '479 patent throughout the United States for the life of the '479 patent." Carmel further grants Immudyne a worldwide license under the licensed technology to be used in conjunction with the license under the '479 patent. Finally, Carmel agrees to disclose any improvements made to the invention and to allow Immudyne to make, use and sell such improvements during the term of the agreement, but any improvements by Immudyne become the exclusive property of Immudyne, subject to a license in favor of Carmel.

The second agreement, dated December 1, 1994, is entered into between Carmel and Immudyne and relates to patent 5,223,491. Similar to the 1986 agreement, Carmel represents and warrants that it possesses "an exclusive sublicense governing the right to make, use and sell the inventions claimed in U.S. Patent No. 5,223,491" (defined as the "Patent"), "as well as certain rights in and to various technical information, know-how, expertise and trade secrets related thereto" (defined as "licensed technology"), pursuant to a sublicense under a License Agreement between Donzis Research Laboratories, Inc. and Carmel. The terms "Patent" and "licensed technology" are collectively defined as "Licensed Products", and Carmel grants to Immudyne an exclusive sublicense "to make, use and sell Licensed Products utilizing the inventions claimed in the Patent throughout the United States." Carmel further grants to Immudyne a "worldwide sublicense under [the] licensed technology to be used in conjunction with the sublicense under the Patent." Carmel agrees to disclose any improvements made to the invention and to allow Immudyne to make, use and sell such improvements. Unlike the 1986 agreement, any improvements by Immudyne become the exclusive property of Donzis, subject to a nonexclusive license in favor of Immudyne to the extent Carmel is entitled to grant such a license.

The third license agreement, dated April 20, 1995, is between Immudyne and Bradwood Limited. Although the third license agreement was subsequently amended to add Carmel, Donzis Research Laboratories, Inc., Donzis and MDH Laboratories, Inc. as licensors, this third agreement is not relevant to our analysis because it is not a license *to* Immudyne by Carmel or Donzis, but a license *by* Immudyne and others to Bradwood.[3]

McLaughlin and McCarvill did not offer into evidence the license agreements between Donzis and Carmel or a license agreement relating to patent 4,891,220. In Donzis's response, he states that 4,891,220 is owned by Immudyne, and the patent shows Donzis as inventor but Immudyne as assignee. If Immudyne is the owner of the patent by assignment, Carmel would not license the patent to the entity that owns it.

Under the terms of the license agreements, Immudyne is granted a sublicense in the patents and various technical information, know-how, expertise and trade secrets relating to the patents. We conclude that the term "related technology" as used in the Rule 11 Agreement unambiguously refers to the technology licensed under the existing license agreements. The Rule 11 Agreement only required Donzis and Carmel to reaffirm that Carmel or Immudyne, respectively, is the sole and exclusive licensee of the patents and related technology currently licensed to Carmel and Immudyne, respectively, as set forth in the license agreements. We note that if Immudyne is the owner of patent 4,891,220, as stated in Donzis's response and as it appears from the patent information in our record, the expansive language of the summary judgment would require Donzis and Carmel to reaffirm a statement that is untrue or at least misleading, i.e., that Immudyne is the exclusive licensee of a patent that it owns.

McLaughlin and McCarvill rely heavily on the decision in *Clanin* to support their contention that a variance in the terms between

3. We also note that this third license agreement is not included in the definition of "License Agreements" in the summary judgment.

a Rule 11 Agreement and an agreed judgment is permissible. *Clanin* does not support their position. In *Clanin,* the court addressed the trial court's authority to supplement the terms of an agreement where a complete division of property in a divorce is mandated by statute. 918 S.W.2d at 677–78. The court held that the trial court was bound by the parties' agreement but was permitted to make a "just and right" division of the property not addressed in the parties' agreement in accordance with the statutory mandate. *Id.* The court noted that none of the provisions dividing the remaining property that was not addressed by the agreement were beyond the scope of the parties' agreement. *Id.* The court further noted that one provision of the trial court's decree was contrary to the terms of the parties' agreement and reversed the cause to the trial court to reform the decree. *Id.* at 678.

In this case, the parties entered into a Rule 11 Agreement that required certain reaffirmations and representations to be made regarding certain patents and related technology that were the subject of existing license agreements between the parties. The trial court's summary judgment went beyond the scope of the parties' agreement and added additional terms. Since a trial court is prohibited from supplying terms, provisions or conditions not previously agreed upon by the parties, we reverse the summary judgment. *Tinney v. Willingham,* 897 S.W.2d at 544; *McLendon v. McLendon,* 847 S.W.2d at 610; *Dodson v. Seymour,* 664 S.W.2d at 161.

### CONCLUSION

The appellees' motions to dismiss are denied because the exception to the acceptance of benefits doctrine is applicable. We hold that the Rule 11 Agreement is unambiguous and reverse the summary judgment because it added terms that were beyond the scope of the Rule 11 Agreement. The cause is remanded to the trial court for further proceedings consistent with this opinion.