MIGA v. JENSEN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-277-CV

DENNIS L. MIGA APPELLANT

V.

RONALD L. JENSEN APPELLEE

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant Dennis L. Miga appeals the trial court’s granting of summary judgment in favor of Appellee Ronald L. Jensen.  Jensen filed this lawsuit against Miga, seeking the recovery of an approximately $23,400,000 payment that he tendered to Miga toward the satisfaction of a judgment in order to stop the running of postjudgment interest on the judgment pending cross-appeals. 

Following the initial lawsuit, the Texas Supreme Court reversed the trial court’s judgment, directed the entry of a judgment for $1,034,400, and directed that Miga receive ten percent postjudgment interest, compounded annually.  
See
 
Miga v. Jensen
, 96 S.W.3d 207, 217-18 (Tex. 2002) (
Miga I
).  Jensen then brought this lawsuit to recover the overpayment, and both parties moved for summary judgment.  The trial court granted Jensen’s motion for summary judgment and denied Miga’s motion for summary judgment.  In five issues, Miga asserts that the trial court erred by granting Jensen’s motion for summary judgment because he is not required to repay the money that Jensen voluntarily agreed to unconditionally tender and because there are genuine issues of material fact.  We affirm. 

PROCEDURAL BACKGROUND

This case has its origins in a prior lawsuit filed by Miga against Jensen.  In that case, the jury found for Miga on his theories of breach of contract, common law fraud, and fraud in a stock transaction.  Miga filed a motion for judgment on the verdict, and Jensen filed a motion for judgment notwithstanding the verdict.  The trial court disregarded the jury’s findings of common law and statutory fraud and the jury’s award of punitive damages and entered judgment for Miga for $18,810,086 on his claim for breach of contract. The trial court also awarded Miga prejudgment interest on the amount of actual damages awarded amounting to $4,486,385.86.

Both parties appealed to this court, and we affirmed the trial court’s judgment notwithstanding the verdict, which disregarded the jury’s fraud and punitive damages claim.  
Miga v. Jensen
, 25 S.W.3d 370, 381 (Tex. App.—Fort Worth 2000), 
aff’d in part, rev’d in part
, 96 S.W.3d 207 (Tex. 2002) (
Miga I
).  After holding that the trial court’s judgment on Miga’s contract claim provided for a double recovery, we rendered judgment awarding Miga damages for $17,775,686.  
Id.
 at 381.

To suspend execution of the judgment pending appeal to the Texas Supreme Court, Jensen filed a supersedeas bond in the amount of $25,496,623.39, which subsequent riders increased to $29,500,000.  Shortly after this court’s decision in
 Miga I
, the parties entered into an Agreed Order, which the trial court signed, under which Jensen made “an unconditional tender [to Miga]. . . of the sum of $23,439,532.78. . . toward satisfaction of the Judgment in order to terminate the accrual of post-judgment interest on that sum.”

After this court’s opinion in 
Miga I
, both parties filed petitions for review in the Texas Supreme Court, which were granted.  
The supreme court held that the proper measure of damages for the breach of a stock option contract was the amount the jury had awarded for the value of the stock at the time of the breach, which amounted to $1,034,400, and directed that the case be remanded to the trial court for rendition of a judgment for Miga in that amount, along with prejudgment and postjudgment interest.  
Id. 
at 215-17.  In that opinion, the supreme court considered and rejected Miga’s assertion that Jensen’s $23,439,532.78 payment to Miga mooted his right to appeal.  
See id.
 at 211-12.  Miga filed a motion for rehearing, seeking clarification regarding whether he was entitled to keep the payment, but the supreme court denied the motion for rehearing without opinion.

On remand, Miga moved for entry of a modified judgment in accordance with the supreme court’s opinion, judgment, and mandate.  Jensen filed a cross-motion for restitution, requesting that the trial court render judgment against Miga for over $27 million, representing the approximately $23,400,000 unconditional payment, less the approximately $1.8 million awarded to Miga under the supreme court’s ruling, plus interest.  The trial court rendered judgment for Miga for $1,879,382.11, including contract damages, attorney’s fees, court costs, principal, and interest.  The trial court addressed only the issues specifically directed by the supreme court’s mandate and expressly declined to address Jensen’s cross-motion for restitution.

Jensen subsequently filed this lawsuit, seeking recovery of $21,560,150.67, plus interest, under theories of restitution, money had and received, and unjust enrichment
.  Miga filed a combined no-evidence and traditional motion for summary judgment, and Jensen filed a response and cross-motion for traditional summary judgment.  The parties continued to file supplemental and renewed motions for summary judgment.  The trial court signed an order granting Jensen’s renewed motion for summary judgment
(footnote: 1) and denying Miga’s renewed motion for summary judgment.  The trial court also signed a judgment awarding Jensen $21,560,150.67, together with prejudgment and postjudgment interest against Miga and his wife.  Following the parties’ stipulation dismissing Miga’s wife, the trial court signed a modified judgment assessing the judgment against Miga alone.  This appeal followed.

STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.  
Tex. R. Civ. P.
 166a(I).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(I) & cmt.; 
Sw. Elec. Power Co., 
73 S.W.3d at 215.

We review the evidence in the light most favorable to the party against whom the no evidence summary judgment was rendered.  
King Ranch, Inc. v. Chapman
, 118 S.W.3d 742, 751 (Tex. 2003), 
cert. denied
, 541 U.S. 1030 (2004); 
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). 

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872 (Tex. 2000).  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.

THE PARTIES’ SUMMARY JUDGMENT GROUNDS

In his motion for summary judgment, Jensen alleged three grounds why he was entitled to summary judgment as a matter of law.  He claimed he conclusively proved his entitlement to a refund of the amount tendered pursuant to the Agreed Order under the theories of restitution, money had and received, and unjust enrichment.  The trial court’s order granting summary judgment in his favor was a general order that did not specify which of the three grounds the court granted summary judgment on.

In his motion for summary judgment and responses to Jensen’s motion for summary judgment, Miga asserted that each of Jensen’s pleaded theories fail as a matter of law because the existence of the parties’ express contract bars Jensen’s quasi-contractual theories of recovery.  Miga also contended that the Agreed Order constituted a voluntary payment to Miga that was nonrefundable.

Jensen replied that Miga is collaterally estopped from asserting that Jensen cannot recover payment under the Agreed Order because the Texas Supreme Court in 
Miga I
 already considered and rejected Miga’s argument. 

THE AGREED ORDER

The trial court’s Agreed Order provides:

WHEREAS Defendant Ronald L. Jensen (“Jensen”) desires to make an unconditional tender to Plaintiff Dennis L. Miga (“Miga”) of the sum of $23,439,532.78 (the “Tender Amount”) toward satisfaction of the Judgment in order to terminate the accrual of postjudgment interest on that sum; and

WHEREAS Miga is willing to accept the tender under the terms of this Agreed order and the termination of the accrual of postjudgment interest on the amount paid; and

WHEREAS Capitol Indemnity Corporation (“Capitol”) has previously posted a supersedeas Bond, which was filed with and approved by the Tarrant County District Clerk on April 13, 1998, in the amount of $25,496,623.39, together with Increase Riders filed June 1, 1999 and April 7, 2000 in the total face amount of $29,500,000 (the original supersedeas bond together with both “Increase Riders” are hereafter collectively referred to as “The Supersedeas Bond”); and

WHEREAS The Supersedeas Bond is secured by funds held in a collateral account by Merryll Lynch, Pierce, Fenner & Smith, Inc. (the “Collateral Account”); and

WHEREAS to secure the release of the funds from the Collateral Account to make the proposed tender it is necessary to reduce the obligation of the surety on the supersedeas bonds; and

WHEREAS the parties have agreed to the terms of this Agreed Order to achieve the objectives described above; it is therefore

ORDERED that the obligation of Capitol Indemnity Corporation on The Supersedeas Bond, is reduced to the total of $6,060,467.22, effective immediately, and shall otherwise remain in effect unless and until modified by further order of this Court.  It is further 

ORDERED that Jensen cause a cashier’s check in the amount of $23,439,532.78 payable to Dennis L. Miga and Thompson & Knight, L.L.P. to be delivered to counsel for Miga by the close of business on August 29, 2000.  It is further

ORDERED that the payment of the Tender Amount in accordance with the foregoing shall terminate the accrual of postjudgment interest on the amount so paid.

Dated:  August 29, 2000.

The parties agreed to the form and substance of the Agreed Order.

THE PARTIES’ CONTENTIONS ON APPEAL

Miga raises five issues on appeal.  In his first issue, Miga claims that because Jensen made an “unconditional tender” under the Agreed Order, Jensen’s payment is nonrefundable and forecloses completely Jensen’s recovery under the theories of restitution, money had and received, and unjust enrichment.  Miga’s second issue asserts that the voluntary-payment rule bars Jensen’s recovery under any of these three theories.  In his third issue, Miga contends that even if Jensen’s three theories could survive the unconditional tender and the voluntary-payment rule, Jensen failed to conclusively establish all the elements of any of the three theories he alleged.  Miga’s fourth issue asserts that Jensen failed to establish his theory that the supreme court’s opinion in 
Miga I 
determined that Jensen is entitled to recover Jensen’s approximately $23,400,000 payment (i.e., that Miga is collaterally estopped from relitigating an issue that the supreme court held in Jensen’s favor).  Miga’s fifth issue claims that there are genuine issues of material fact as to Jensen’s claims and Miga’s claims.

COLLATERAL ESTOPPEL

Jensen argued in the trial court and in this court that Miga is collaterally estopped from asserting the Agreed Order as a defense to Jensen’s claim for reimbursement because the supreme court rejected an identical argument on the identical facts in 
Miga I
.  
See 
96 S.W.3d at 211-12.  Jensen also argues that Miga is collaterally estopped from asserting the voluntary-payment rule as a defense.  

Collateral estoppel, or issue preclusion, prevents a party from relitigating a particular fact issue that the party already litigated and lost in an earlier suit. 
 Quinney Elec. v. Kondos Entm’t
, 988 S.W.2d 212, 213 (Tex. 1999).  The doctrine of collateral estoppel generally applies when the issue was fully and fairly litigated in the previous action and was essential to the judgment in the previous action.  
Id.
  To invoke collateral estoppel, a party must establish that (1) the same facts sought to be litigated in the second suit were fully litigated in the first suit, (2) those facts were essential to the judgment in the first suit, and (3) the parties were cast as adversaries in the first suit.  
Sysco Food Servs. v. Trapnell
, 890 S.W.2d 796, 801 (Tex. 1994).  The issue decided in the first suit must be identical to the issue in the pending suit.  
State and County Mut. Fire Ins. Co. v. Miller
, 52 S.W.3d 693, 696 (Tex. 2001).  Collateral estoppel may preclude relitigation of issues even though the later suit is based on a different cause of action.  
Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.
, 962 S.W.2d 507, 521 (Tex. 1998).

Jensen asserts collateral estoppel based on the issue litigated in the first lawsuit regarding “whether Jensen’s $23.4 million payment to Miga mooted his appeal of the judgment against him.”  
See Miga I
, 96 S.W.3d at 211.  Jensen claims that Miga’s motion to dismiss Jensen’s appeal in the initial lawsuit involved the same argument based on the same facts—that the Agreed Order constituted an agreement that Jensen’s payment was final and nonrefundable—and consequently, Miga’s attempt to resurrect this argument in opposition to Jensen’s right to restitution was barred by collateral estoppel. Jensen contends that had the supreme court found that the payment was final and nonrefundable, as asserted by Miga, it would have been required to dismiss the appeal as moot.  Jensen also argues that Miga is estopped from asserting the voluntary-payment rule as a defense by the supreme court’s denial of Miga’s motion to dismiss as moot Jensen’s appeal in 
Miga I
 because the decision was based in part on the fact that the voluntary-payment rule barred Jensen from proceeding.

In 
Miga I
, the supreme court stated that “[t]he Texas rule is not, and never has been, simply that any payment toward satisfying a judgment, including a voluntary one, moots the controversy and waives the right to appeal that judgment,” explaining that a party must be able to halt the accrual of postjudgment interest, yet still preserve appellate rights.  
Id.
  The supreme court interpreted the language of the Agreed Order, which stated that the purpose of Jensen’s payment was to “terminate the accrual of postjudgment interest,” and held that Jensen had preserved his right to appeal.  
Id. 
 Thus, the focus of the supreme court’s determination was whether the right to appeal had been preserved, rather than whether Jensen reserved or relinquished a right to a refund of the money in the event of a reversal or whether the voluntary-payment rule precluded Jensen’s recovery.  
See id.
  Accordingly, we agree with Miga that the issues decided in 
Miga I
 were separate and distinct issues from the issue to be decided in this lawsuit, and collateral estoppel does not bar litigation of the present issue here.  We sustain Miga’s fourth issue.

CLAIM FOR RESTITUTION

We now consider Miga’s third issue, in which he contends that Jensen failed to conclusively establish his claim for restitution.

Did Jensen Prove The Elements Of His Cause Of Action For Restitution?

The Restatement of Restitution section 74 provides that

[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

Restatement (First) OF Restitution
 § 74 (1937).  The Restatement’s rule on restitution following reversal is supported by long-standing United States Supreme Court precedent.  
See County of Dakota v. Glidden
, 113 U.S. 222, 224, 5 S. Ct. 428, 429 (1885) (stating that a judgment debtor can recover money paid under a judgment that has subsequently been reversed); 
Bank of the U.S. v. Bank of Wash
., 31 U.S. 8, 17 (1832) (noting that, on the reversal of a judgment, the law raises an obligation on the party who has received the benefit of an erroneous judgment to make restitution to the other party for what he has lost).  Texas precedent is also in accord with the Restatement.  
See Drake v. Trinity Universal Ins. Co.
, 600 S.W.2d 768, 770-71 (Tex. 1980) (requiring that an attorney who was paid for legal services to an estate under a court order was liable to reimburse the estate when the order was reversed on appeal); 
Cleveland v. Tufts
, 69 Tex. 580, 7 S.W. 72, 74 (1888) (noting that money paid upon a judgment that is later reversed may be recovered by the party making the payment).  Thus, to be entitled to restitution following a reversal, Jensen must prove that he conferred a benefit to Miga in compliance with the judgment and that the judgment was subsequently reversed or modified on appeal.  
See
 
Restatement (First) of Restitution
 § 74.

Miga asserts that Jensen is not entitled to restitution because he has not proven that he suffered an unconscionable loss and that Miga obtained an unjust enrichment by receiving the funds, as required by an action for common law fraud.  The cases Miga cites are inapplicable to the case at bar because they are not cases requiring restitution following a reversal; rather, the cases apply to restitution of payments made under mistake of fact.  
See Bryan v. Citizens Nat’l Bank in Abilene
, 628 S.W.2d 761, 763 (Tex. 1982) (stating that a party who pays funds under a mistake of fact may recover restitution of those funds if the party to whom payment was made has not materially changed his position in reliance thereon in order to prevent an unconscionable loss); 
Cmty. Mut. Ins. Co. v. Owen
, 804 S.W.2d 602, 605 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (stating that a party who has paid funds due to a mistake of fact is entitled to restitution, if the receiving party has not materially changed its position in reliance on the payment).

Miga also asserts that Jensen’s restitution-after-reversal cases are not applicable to the case at bar because the cases have a common element requiring the payment to be made under some form of judicial compulsion. Restitution after reversal is available in cases “where a judgment has been entered upon which money has been paid by the defeated party 
or
 property has been sold on execution.”  
See 
Restatement (First) of Restitution
 § 74 cmt. a (emphasis added).  Therefore, as long as a judgment that is subsequently reversed is paid by the defeated party, the judgment does not have to be paid under some form of judicial compulsion for the party to be entitled to repayment.  
See id.

Miga asserts that Jensen is not entitled to recover because he made the payment in compliance with the “freely negotiated” Agreed Order.  Miga  further contends that one of the exceptions to Restatement of Restitution section 74 denies restitution when “the parties contract that payment is to be final,” and that this rule precludes Jensen’s right to recover the payment. However, in 
Miga I
, the supreme court determined that a party may make a payment toward satisfying a judgment, including a voluntary one, without mooting the right of appeal if the judgment debtor clearly expresses an intent that he intends to exercise his right of appeal and appellate relief is not futile.  
See 
96 S.W.3d at 211-12.  We believe that implicit in reserving a right to appeal is the right to a refund of the money in the event that the judgment is later modified or reversed.

Miga asserts that Restatement of Restitution section 74 contemplates that a judgment can be reversed or set aside even though the parties have contracted that the payment would be final, with the only consequence being that restitution is disallowed.  
See 
Restatement (First) of Restitution 
§ 74.  Here, however, the parties did not clearly contract that the payment would be final.  Only when the parties clearly agree that the payment shall be final should one party be held to such a result.  We do not agree with Miga’s assertion that the parties had contracted that the payment was to be final; Jensen reserved his right to appeal in this case and the parties did not clearly express an intention that the payment would be final.

Miga contends that restitution in this instance would be inequitable
(footnote: 2)  because he detrimentally changed his position in reliance on existing law by accepting payment from Jensen without anticipating that Jensen’s payment would moot the appeal. However, as the supreme court noted in 
Miga I
, “The Texas rule is not, and never has been, simply that any payment toward satisfying a judgment, including a voluntary one, moots the controversy and waives the right to appeal that judgment.”  96 S.W.3d at 211.

We hold that Jensen has proven as a matter of law that he is entitled to restitution.  Accordingly, we overrule Miga’s third issue.  We next address whether Miga has proven his defenses as a matter of law, thereby precluding Jensen’s recovery.

Did Jensen Make An Unconditional Tender?

In his first issue, Miga claims that because Jensen made an “unconditional tender” under the Agreed Order, Jensen’s payment is nonrefundable and forecloses completely Jensen’s recovery under the theory of restitution.  
Miga asserts that he is not required to repay the money that Jensen voluntarily agreed to unconditionally tender.  Miga contends that applying the rules regarding the interpretation of contracts demonstrates that Jensen’s payment of approximately $23,400,000 to Miga was intended to be unconditional, unrestricted, and nonrefundable.

Jensen responds that the Agreed Order does not bar his right to recovery because
 the term “unconditional” as used in the Agreed Order did not mean that Jensen’s payment was nonrefundable, and the document contains no language of settlement, finality, discharge, release, or dismissal.  Jensen states that his tender was “unconditional” to avoid the flaw in 
Baucum v. Great Am. Ins. Co.
, 370 S.W.2d 863, 866 (Tex. 1963), in which the appellant’s delivery

of the tendered funds was conditioned on the appellee’s execution of a release, and therefore, failed to terminate the accrual of interest.
(footnote: 3)
 The Agreed Order states that Jensen is making an “unconditional tender” to Miga “in order to terminate the accrual of postjudgment interest” on the approximately $23,400,000 judgment.  According to the Agreed Order, Miga is “willing to accept the tender under the terms of this Agreed Order and the termination of the accrual of postjudgment interest on the amount paid.” Finally, the Agreed Order explicitly states that the parties have agreed to its terms in order to “achieve the objectives described above.”

When a judgment debtor makes a timely, unconditional tender of payment of the judgment, no postjudgment interest will be allowed.  
Trevino v. City of Houston
, 695 S.W.2d 289, 291 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.).  A tender is defined as “an unconditional offer by a debtor or obligor.”  
Baucum,
 370 S.W.2d at 866.

The supreme court explained in 
Miga I
 that “[w]hen a judgment creditor has received an unconditional tender of the money awarded, and may invest it as he chooses, there is no need for the continuing accrual of post-judgment interest.”  
Miga I
, 96 S.W.3d at 212.  Postjudgment interest is simply compensation for a judgment creditor’s lost opportunity to invest the money awarded as damages at trial.  
See, e.g., Johnson & Higgins of Tex., Inc.
, 962 S.W.2d at 528.  Accordingly, the language in the Agreed Order clearly manifests the parties’ intent that the payment was “unconditional” in the sense that Miga had an unconditional right to use the money because, had the tender been conditional, postjudgment interest would have continued to accrue.  
See C.F. Bean Corp. v. Rodriguez
, 583 S.W.2d 900, 900-02 (Tex. Civ. App.—Corpus Christi 1979, no writ).

A finding that the word “unconditional” in the Agreed Order indicated that the tender was “unconditional, unrestricted, and nonrefundable” as proposed by Miga would not make sense.  Here, Jensen’s continued pursuit of appellate review would be fruitless if he had relinquished the approximately $23,400,000 tender without anticipating a refund in the event that he prevailed on appeal.  Furthermore, as noted by the supreme court, Jensen had informed Miga that he believed the Agreed Order would not moot his complaint and that he would continue to pursue appellate review.  
See Miga I
, 96 S.W.3d at 212.  Additionally, implicit in reserving a right to appeal is the understanding that the party would be entitled a refund upon prevailing on appeal.  Thus, we disagree with Miga’s contention that Jensen’s argument would require this court to add an unstated condition to the parties’ agreement.  We overrule Miga’s first issue. 

Does The Voluntary-Payment Rule Bar Jensen’s Recovery?

In his second issue, Miga asserts that the voluntary-payment rule bars Jensen’s quasi-contractual theories of recovery.

The common law voluntary-payment rule requires that money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered merely because the party at the time of payment was ignorant of or mistook the law as to his liability.  
BMG Direct Mktg., Inc. v. Peake
, 178 S.W.3d 763, 768 (Tex. 2005).  The rule is a defense to claims asserting unjust enrichment; that is, when a plaintiff sues for restitution claiming a payment constitutes unjust enrichment, a defendant may respond with the voluntary-payment rule as a defense.  
Id.
  Absent fraud, coercion, or duress, public policy favors protecting the finality of payments when a person is aware of all the facts upon which the liability to make payment depends.  
Id. 
at 769. 

Many courts have recognized a “modern” type of duress often referred to as “business compulsion” or “economic duress.”  
Dallas County Cmty. Coll. Dist. v. Bolton
, 185 S.W.3d 868, 877 (Tex. 2005); 
State v. Akin Prods. Co.
, 155 Tex. 348, 286 S.W.2d 110, 111 (Tex. 1956); 
Crow v. City of Corpus Christi
, 146 Tex. 558, 562-63, 209 S.W.2d 922, 924-25 (1948).  Business compulsion and economic duress have been referred to as “implied duress,” because the pressure to pay these government exactions is indirect and flows from statutes or ordinances.  
See Bolton
, 185 S.W.3d at 877 (interpreting 
Miga I
, 96 S.W.3d at 211, 224-25, by stating “compulsion ‘implied by the threat of statutory penalties and accruing interest’ constitutes economic duress”); 
see also Highland Church of Christ
, 640 S.W.2d at 237 (holding that duress may be implied from a statute which imposes a penalty and interest for failure to timely pay a tax); 
Nat’l Biscuit Co. (Nabisco) v. State
, 134 Tex. 293, 303-04, 135 S.W.2d 687, 692-93 (1940) (noting that where a statute imposed the penalties at issue, the taxes were paid under duress, and the taxpayer need not take the risk of incurring the statutory punishments while the case was being litigated); 
Austin Nat’l Bank v. Sheppard
, 71 S.W.2d 242, 245-46 (Tex. 1934). 

The Agreed Order states that Jensen committed to make “an unconditional tender to [Miga] of the sum of $23,439,532.78 . . . toward satisfaction of the Judgment in order to terminate the accrual of postjudgment interest on that sum.”  Interest was accruing at a rate of ten percent, compounded annually.  Accordingly, Jensen signed the Agreed Order under economic duress, and the voluntary-payment rule does not bar his right to recovery.  We overrule Miga’s second issue.

Having determined that Jensen established as a matter of law that he was entitled to restitution and that Miga failed to conclusively establish his defenses, we need not address the remaining grounds in Jensen’s motion for summary judgment.  Because we have concluded that Jensen proved his entitlement to summary judgment under the theory of restitution, we overrule Miga’s fifth issue which asserts that there is a genuine issue of material fact regarding Jensen’s entitlement to summary judgment.

CONCLUSION
 

Having overruled Miga’s issues one, two, three, and five,
(footnote: 4) we affirm the judgment of the trial court.

DIXON W. HOLMAN

JUSTICE

PANEL B:  CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

CAYCE, C.J. dissents with opinion

DELIVERED:  November 30, 2006

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-277-CV

DENNIS L. MIGA APPELLANT

V.

RONALD L. JENSEN APPELLEE

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

DISSENTING OPINION

------------

I respectfully dissent.  There are three irrefutable facts in this case that compel us to reverse the trial court’s summary judgment and render judgment in favor of Miga:

Jensen made an “unconditional tender” of $23.4 million to Miga pursuant to the clear and unambiguous terms of their Rule 11 agreement for the express purpose of terminating the accrual of postjudgment interest on that sum.

Jensen reserved the right to appeal the judgment, but he did 
not
  reserve the right to a refund of the payment in the event his appeal was successful.

Jensen paid the money to Miga 
voluntarily
—he had no obligation to pay any amount of money to Miga to satisfy the judgment because he had posted a supersedeas bond that fully secured the judgment.

These facts preclude Jensen from recovering the money from Miga under the theory of restitution as a matter of law.
(footnote: 1)  

To avoid this result, however, the majority makes three novel and facially erroneous pronouncements, none of which have any basis in the law or the facts of this case.  First, the majority holds that Jensen’s “unconditional tender“ is, indeed, 
conditional
, and that, contrary to the plain and ordinary meaning of this term, when used in an agreement such as the one here, it means that the party who accepts the tender only has the “unconditional right to use the money” pending the outcome of the appeal.  Wholly ignoring the substantial benefits Jensen gained from the agreement,
(footnote: 2) and relying entirely on hindsight, the majority reasons that it “would not make sense” to interpret the word  “unconditional” in accordance with its commonly understood meaning because to do so would make his appeal of the judgment “fruitless”—notwithstanding the fact that Jensen would remain liable to Miga under the judgment for over $6 million if he did not appeal.
(footnote: 3)
 Second, the majority holds that when a judgment debtor expresses an intent to exercise his right to appeal in connection with an unconditional tender of money paid to the judgment creditor pursuant to the terms and conditions of a Rule 11 agreement, the judgment debtor has an “implicit” right to a refund if the appeal is successful.
(footnote: 4)  According to the majority opinion, this implicit reservation of refund rights trumps the express terms of the written agreement foreclosing such rights—even when the refund would be detrimental to the judgment creditor.
(footnote: 5)
 Third, after noting two decisions of the Supreme Court of Texas supporting Miga’s argument that Jensen’s payment was made voluntarily and without duress,
(footnote: 6) the majority departs from the controlling principles of those cases and holds that, when Jensen made his unconditional tender of $23.4 million toward the satisfaction of the judgment to terminate the accrual of postjudgment interest, he was not acting voluntarily.  Rather, the majority concludes Jensen was acting under “economic duress,” even though he had the demonstrated ability to avoid paying Miga the $23.4 million by obtaining a supersedeas bond that fully secured the judgment.

When interpreting contracts, the role of courts is to “ascertain the true intentions of the parties as expressed in the instrument.”  
Coker v. Coker
, 650 S.W.2d 391, 393 (Tex. 1983).  We are to determine what the parties’ expressed intent 
is
, not what we believe it should be—upholding only those parts of their agreement that “make sense” to us and rejecting those that do not.  We are also “prohibited from supplying terms, provisions, or conditions not previously agreed upon by the parties.”  
Donzis v. McLaughlin
, 981 S.W.2d 58, 65 (Tex. App.—San Antonio 1998, no pet.).  The parties to a contract are considered “masters of their own choices” and “each is entitled to rely upon the words selected to demarcate their respective obligations and rights.”  
ASI Tech., Inc. v. Johnson Equip. Co.,
 75 S.W.3d 545, 549 (Tex. App.—San Antonio 2002, pet. denied) (quoting 
Cross Timbers Oil Co. v. Exxon Corp.
, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.)).  

Because I believe the majority has violated these well-established principles of contract interpretation,
(footnote: 7) and misapplied the principles of duress and the voluntary payment rule, I must respectfully dissent.  I would reverse the judgment of the trial court and render judgment that Jensen take nothing on all of his quasi-contract claims against Miga.

JOHN CAYCE

CHIEF JUSTICE 

DELIVERED:  November 30, 2006

FOOTNOTES
1:
In the final judgment, the trial court recited that before the court was Jensen’s renewed motion for summary judgment or, in the alternative, motion for entry of order under rule of civil procedure 166a(e).  
Tex. R. Civ. P.
 166a(e). After granting Jensen’s renewed motion for summary judgment, the trial court determined that the motion for entry of order under rule of civil procedure 166a(e) should be denied as moot.

2:
The dissent also notes that Miga has paid approximately $5 million in taxes on the money received from Jensen.  
See 
Dissent. Op. at 4 n.5.  Jensen asserts that under the facts of this case, Internal Revenue Code 26 U.S.C.A. § 1341 (2002) provides a means which would allow Miga to receive a refund of the taxes paid; Miga contends his right to a refund under this statute “is by no means assured.”  Because we are not privy to the detailed information that Miga would need to provide to the Internal Revenue Service to claim such a refund, we cannot address the likelihood of a refund to Miga of the taxes he previously paid.

3:
In Miga’s response to Jensen’s motion for temporary injunction, Miga stated, “It is undisputed that had the tender been conditional, postjudgment interest would have continued to accrue.”

4:
Although we sustained Miga’s fourth issue and held that Miga is not collaterally estopped from asserting the Agreed Order as a defense to Jensen’s claim for reimbursement, our holding does not affect the trial court’s judgment.  Our holding on this issue merely meant that we would consider Miga’s other issues on appeal.

1:
Restatement (First) of Restitution
 § 112 (1937) (“A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons.”); 
see also
 
Dallas County Community College Dist. v. Bolton
, 185 S.W.3d 868, 883 (Tex. 2005) (students not entitled to refund of fees because payment was voluntary and not under duress); 
Fortune Prod. Co. v. Conoco, Inc.
, 52 S.W.3d 671, 684 (Tex. 2000) (“When a valid express contract covers the subject matter of the parties’ dispute, there can be no recovery under a quasi-contract theory.”); 
Allstate Ins. v. Felts
, No. 09-92-00239-CV, 1993 WL 367053 at *3 (Tex. App.—Beaumont, Sept. 16, 1993, writ denied) (not designated for publication) (“unconditional” means that the paying party “has no intent to attempt to recover the funds”)

2:
As a result of the agreement, no further postjudgment interest would accrue on $23.4 million of the judgment amount, Jensen’s supersedeas bond  obligation was reduced from $29.5 million to approximately $6.1 million, and the collateral securing the $23.4 million portion of the bond would be released to Jensen.  Miga’s appellate counsel explains the circumstances surrounding the Rule 11 agreement as follows: 

At the time of the agreement, this Court had just affirmed nearly all of the trial court’s judgment against Jensen (while also affirming the denial of Miga’s punitive damages award, striking the $1,034,400 actual damages award, and denying prejudgment interest).  Facing the continuing accrual of post judgment interest while both parties contemplated further appeals to the Texas Supreme Court, Jensen had at least two choices regarding the existing judgment liability.  Obviously, he could have left the supersedeas bond in place and continued to fund the accruing post judgment interest – a logical and economically neutral choice if he believed he would ultimately prevail and obtain the release of his bond collateral.  But given the statistical odds against the Supreme Court even reviewing, much less reversing, the judgment against him, Jensen chose certainty (stopping the accrual of post judgment interest) over speculation (waiting for a potential reversal so he could recover his collateral).  He did so by unconditionally paying Miga an amount equal to the portion of the judgment that he very likely would owe in any event. 

3:
Despite Jensen’s unconditional tender of $23.4 million and the release of his bond collateral, there still remained a judgment against Jensen that was secured by a supersedeas bond of nearly $6.1 million.  Jensen, therefore, had a justiciable interest in appealing to discharge the remaining judgment to obtain a release of the bond that secured it. 

4:
The majority denies that adding this implicit term to the Rule 11 agreement in this case “add[s] an unstated condition to the parties’ agreement,” but, of course, that is exactly what the majority has done.

5:
Miga paid approximately $5 million in taxes on the money.  Under the majority opinion, he must now pay Jensen the entire balance of the $23.4 million plus interest.

6:
Dallas County Community College Dist.
, 185 S.W.3d at 881 (students seeking refund of fees were not under duress when fees were paid because they “had options by which they could avoid paying the increased fee or at least lower the fee and still take college classes”); 
BMG Direct Mktg. v. Peake
, 178 S.W.3d 763, 775 (Tex. 2005) (money voluntarily paid, with full knowledge of the facts, in the absence of fraud, deception, duress or compulsion, cannot be recovered merely because the party at the time of payment was ignorant of or mistook the law as to his liability).

7:
The same rules governing the interpretation of contracts apply in construing court orders and Rule 11 agreements.  
Lone Star Cement Corp. v. Fair
, 467 S.W.2d 402, 404-05 (Tex. 1971).