# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00087-CV

**Edwin Kiest Norton III, Appellant**

**v.**

**Mary Michelle Cheney, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-FM-11-000777, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In 1990, Edwin Kiest Norton III and Mary Michelle Cheney got married. Years before the marriage, Norton opened a restaurant with several friends that would eventually become the County Line BBQ chain of restaurants. When the restaurant started becoming successful, Norton and his associates incorporated their business under the name County Line Enterprises, Inc. When creating County Line Enterprises and then in subsequent transactions, the founders established various protections to ensure that the company remained a closely-held entity, including restrictions on the transfer of stock and guarantees that the remaining founders would have the right to purchase the stock belonging to another founder if that founder died.

In 2011, Cheney filed for divorce. During the divorce proceedings, the parties disputed whether stock that Norton acquired in County Line Enterprises after the death of two founders was community or separate property. After a trial, the district court determined that the stocks transferred

were community property and awarded Cheney $1,573,422.00 for her share of the property. Prior to the final divorce decree being entered, the parties discussed the possibility of having County Line Enterprises satisfy the terms of the judgment.

Ultimately, the parties agreed to let County Line Enterprises cover the amount of the judgment. Specifically, the board of directors for County Line Enterprises passed a resolution agreeing to pay "Cheney an initial payment in the amount of" $178,576.00 and to "execute a promissory note in the principal amount of $1,444,846.00 payable to" Cheney. Moreover, the resolution stated that making the payment and executing the note were "in the best interest" of County Line Enterprises and that County Line Enterprises "derives a benefit" by making the payment and by "undertaking the monetary obligation called for under the note." Furthermore, the promissory note detailed that County Line Enterprises agreed to pay $1,444,846.00 to Cheney in eight equal annual installments of $180,606.00 plus interest at a rate of five percent.

Subsequent to County Line Enterprises agreeing to cover the amount of the judgment and executing a promissory note to that effect, the district court entered its final decree of divorce. Among other things, the decree stated that Cheney was entitled to an award of money to "effectuate a just and right division of property" and incorporated the financial terms agreed to by County Line Enterprises in its resolution and in the promissory note.

After the district court entered its final decree, Norton filed this appeal. In his brief, Norton raises twenty-three issues challenging various determinations, findings, and conclusions made by the district court, but the focus of those issues centers on the district court's determination that the stocks transferred to Norton were community property. In response, Cheney filed an appellee's brief supporting the district court's decree and also filed a motion to dismiss the appeal arguing that

2

Norton had waived his right to appeal and that any controversy was mooted by the execution of a promissory note by County Line Enterprises to pay the judgment awarded to her.

We will grant Cheney's motion and dismiss this appeal.

## DISCUSSION

### Motion to Dismiss

In her motion, Cheney asserts that this appeal should be dismissed because County Line Enterprises has voluntarily chosen to pay the amount of the judgment due by tendering one payment and by executing a promissory note under which it promised to pay the remainder of the judgment by making eight annual payments. Moreover, Cheney argues that because County Line Enterprises' agreement to pay was not conditioned on an appeal being filed and because Norton did not clearly and timely express his desire to appeal, Norton cannot appeal the decree. In a related argument, Cheney contends that any appellate relief requested by Norton would have no effect on County Line Enterprises' obligation to pay. For these reasons, Cheney contends that there is no longer a live controversy between the parties and that the appeal is moot.

"Usually, when a judgment debtor voluntarily satisfies the judgment, the case becomes moot and the debtor waives any right to appeal." *Marshall v. Housing Auth.*, 198 S.W.3d 782, 787 (Tex. 2006). "The rule is intended to prevent a party who voluntarily satisfies a judgment from later changing his or her mind and appealing." *Id.* However, "payment of a judgment will not moot an appeal from that judgment if the judgment debtor timely and clearly expresses an intent to exercise the right of appeal and if appellate relief is not futile." *Id.*; *see Miga v. Jensen*, 96 S.W.3d 207, 212

3

(Tex. 2002); *see also Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009) (explaining that voluntary-payment rule is not employed as much as it used to be because rule's equitable policies have been incorporated into statutory and other remedies). A case becomes moot if the controversy ceases to exist or if the parties no longer have a legally cognizable interest in the case's outcome. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005).[1]

---

[1] The voluntary-payment rule applies in the absence of fraud, duress, or compulsion. *Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009); *see Burns v. Seascape Owners Ass'n*, No. 01-11-00752-CV, 2012 Tex. App. LEXIS 7732, at *31 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) (explaining that payment made involuntarily under duress will not moot appeal); *cf. Miga v. Jensen*, 214 S.W.3d 81, 91 (Tex. App.—Fort Worth 2006) (discussing how duress may be implied when businesses pay judgments in order to avoid harsh statutory penalties or imposition of accruing interest), *aff'd*, 299 S.W.3d 98. In a footnote in the introductory section of his response to the motion to dismiss, Norton suggests that if the facts of this case "don't present a case of economic duress or necessity, then they are awfully close to doing so." As support for this proposition, Norton refers to an affidavit that he attached to his response to the motion to dismiss in which he asserted that his annual income was insufficient to cover the terms of the judgment, that he could not sell his shares in County Line Enterprises without taking a loss, and that having County Line Enterprises execute a note provided a more satisfactory alternative.

Other than this brief assertion, Norton does not further address the idea that the voluntary-payment rule should not apply because he was under economic duress when the note was executed; instead, the focus of his two responses to Cheney's motion to dismiss is on his assertion that he expressed his intention to appeal and that the appellate relief that he is seeking is not futile. In her reply, Cheney refers to evidence from the record establishing the value of the company and of Norton's stock in the company and argues that Norton had sufficient assets to execute his own note to pay the judgment if he wanted to.

In any event, given the briefing on this issue as well as Norton's concession that the execution of the note provided at least partial relief from the economic strain stemming from the judgment, we do not believe that the facts of this case present the type of situation in which duress will prevent an appeal from being mooted by an agreement to pay the full value of the judgment. This seems particularly true in this case where the agreement to pay was made by a third-party corporation after the corporation's members passed a resolution authorizing the execution of a note to pay the judgment. *Cf. Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 881, 883 (Tex. 2005) (recognizing that certain financial consequences do not transform choice into coercion)*; Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002) (noting how payment under economic duress will

**Intent to Appeal**

When challenging Cheney's assertions, Norton contends that courts have determined that the voluntary payment of a judgment mooted an appeal in order to prevent a party from misleading his opponent into believing that the controversy was over by paying the amount owed and then deciding to challenge his opponent's right to recovery and to seek recovery of the money paid. *See Miga*, 96 S.W.3d at 211; *Brown v. Enterprise Recovery Sys.*, No. 02-11-00436-CV, 2013 Tex. App. LEXIS 10658, at *5-6 (Tex. App.—Fort Worth Aug. 22, 2013, pet. denied) (mem. op.). Moreover, Norton insists that he always intended to appeal the district court's decree if the court determined that the shares of County Line Enterprises were community property, that he never changed his mind regarding his intent, and that he never misled Cheney. As support for this assertion, Norton refers to examples in the record where Cheney mentioned before or during the trial that either side might be appealing certain determinations. In addition, Norton highlights that in a hearing held after the trial, Cheney acknowledged that Norton might want to appeal the district court's characterization of the stocks and asked the district court to include appellate attorney's fees in its decree. Finally, Norton refers to an affidavit made by his attorney that was attached to his response to Cheney's motion to dismiss in which his attorney stated that the possibility of an appeal was discussed by the parties and that he told Cheney's attorney that he had advised Norton to appeal.

However, none of the statements in the record or in the affidavit referred to by Norton evidenced a clear intention by Norton that he planned to appeal the decree or that Cheney understood

not moot appeal but listing example of economic duress as payment made under "threat of statutory penalties and accruing interest").

that Norton would be filing an appeal; on the contrary, all of the statements referenced *Cheney's* belief that it was *possible* that Norton might appeal. Moreover and perhaps more importantly, all of those referenced statements were made before County Line Enterprises passed a resolution agreeing to pay Cheney the amount of the judgment and before it executed a promissory note obligating it to pay Cheney the full amount, and nothing in the record or in the affidavit prepared by Norton's attorney demonstrates that any expression regarding Norton's intention to appeal was made when the note was executed or during the hearing held one week before the note was executed in which the parties agreed to allow County Line Enterprises to execute the note in order to satisfy the judgment. *See BMG Direct Mktg. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005) (stating that payment of judgment without expressed intent to appeal moots appeal but that payment with that type of expression does not); *see also Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd.*, 179 S.W.3d 589, 612 (Tex. App.—Austin 2005, pet. denied) (determining that party did not moot controversy by voluntarily paying fine because party wrote cover letter accompanying payment expressing its desire to appeal agency's determination); *cf. Brown*, 2013 Tex. App. LEXIS 10658, at \*4-6 (determining that payment did not moot appeal where appellant sent appellee letter communicating his desire to appeal one week before appellee filed its notice of satisfaction of judgment).[2]

---

[2] In a related set of arguments, Norton contends that the voluntary-payment rule is inapplicable in this case because County Line Enterprises did not pay Cheney the full amount of the judgment, because County Line Enterprises deposited the first payment under the note with the district court, and because the execution of a promissory note should not be deemed the equivalent of actual payment. *Cf. Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (explaining that promissory note is "a contract evincing an obligation to pay money").

Although we have not been able to find a case with this specific fact pattern, we do note that other cases have considered formal agreements to pay as sufficient to invoke the rule. *See Smith v.*

Regarding the hearing, Norton emphasized that having County Line Enterprises execute the note would allow Cheney to obtain the "full enchilada" and would be more advantageous to Cheney than having Norton execute the note himself. In addition, despite statements by the district court questioning whether there might be an appeal, Norton never stated that he intended to appeal the court's decree or that execution of the note was contingent on allowing him to appeal the judgment. Regarding the affidavit, Norton's attorney mentioned discussions regarding the possibility of an appeal and asserted that Cheney's attorney repeatedly asked about the possibility of an appeal by Norton, but he also specified that the conversation closest in proximity to when the note was executed occurred two weeks beforehand. In addition, in the affidavit, Norton's attorney did not assert that he communicated that Norton intended to appeal the decree; instead, he averred that he simply informed Cheney that he had advised Norton to appeal but that no "final word" had been given.

Cheney's attorney also submitted an affidavit in support of her motion to dismiss, and in the affidavit, Cheney's attorney did not dispute the timing and nature of the discussions referenced by Norton's attorney, agreed that he repeatedly asked Norton about his "intentions concerning this

*Abbott*, 311 S.W.3d 62, 78 (Tex. App.—Austin 2010, pet. denied) (considering agreement to pay lump-sum payment as well as monthly payments); *Pipes v. Pipes*, No. 02-07-00346-CV, 2008 Tex. App. LEXIS 5058, at *4 (Tex. App.—Fort Worth July 3, 2008, no pet.) (mem. op.) (discussing agreement to pay arrearages as well as to continue paying spousal maintenance). Moreover, this Court has also determined that "an installment agreement with the Travis County Tax Office" entered into after an appeal had been filed in which the taxpayer admitted liability for taxes and agreed to pay fees and delinquent taxes "extinguished the case or controversy between the parties" where there was no evidence that agreement was entered into under duress or under protest. *See Overdeer v. Travis Cnty.*, No. 03-05-00179-CV, 2005 Tex. App. LEXIS 8550, at *1, 4-5 (Tex. App.—Austin Aug. 16, 2005, no pet.) (mem. op.). In light of this authority, we can see no reason to conclude that the execution of an unconditional promissory note to pay a judgment should not be considered a payment for the purposes of determining whether the controversy between the parties has been mooted.

appeal," and affirmed that the conversations occurred at the latest one week before the parties agreed to allow County Line Enterprises to execute the note and two weeks before the note was executed. *Cf. Beadles v. Lago Vista Prop. Owners Ass'n*, No. 03-05-00194-CV, 2007 Tex. App. LEXIS 3861, at *6-7 (Tex. App.—Austin May 18, 2007, no pet.) (mem. op.) (overruling motion to dismiss and addressing merits of appeal where there was "a dispute in the affidavits" regarding whether attorney informed opposing side of client's desire to appeal when payment was made). However, Cheney's attorney clarified that he asked the questions because he was never given a direct answer and was repeatedly told "that a decision had not been made" and "that there may be a difference of opinion on the matter." Similarly, Cheney's attorney explained that although he "had several phone calls and repeated email correspondence concerning the note," Norton's attorney never mentioned that Norton was planning to appeal the judgment in any of the correspondence or phone calls.

Perhaps more importantly, nothing in the resolution or the promissory note conditioned in any manner County Line Enterprises' obligation to pay. *Cf. Miga*, 96 S.W.3d at 211 (providing that best practice is to explicitly reserve right to appeal on record). Specific to the facts in this case, neither document mentioned the possibility of an appeal or excused County Line Enterprises from the obligation of paying in the event that Norton successfully appealed the district court's decree. Instead, those documents evidenced an unconditional obligation to pay Cheney the full amount of the judgment. *See Dalho Corp. v. Tribble & Stephens*, 762 S.W.2d 733, 734 (Tex. App.—San Antonio 1988, no writ) (dismissing appeal as moot when appellant delivered checks to appellee and noting that checks had "no reservation or limitations noted thereon"); *cf. Smith v. Abbott*, 311 S.W.3d 62, 78 (Tex. App.—Austin 2010, pet. denied) (concluding that claim regarding

8

interest on child-support arrearages was moot where party agreed to repay amount owed through lump-sum payment as well as monthly payments without reserving any right to dispute amount); *Pipes v. Pipes*, No. 02-07-00346-CV, 2008 Tex. App. LEXIS 5058, at *4 (Tex. App.—Fort Worth July 3, 2008, no pet.) (mem. op.) (determining that agreement entered into by both parties after divorce decree was issued that obligated husband to pay arrearages for spousal maintenance and to continue to pay spousal maintenance mooted husband's appeal of trial court's denial of his motion to terminate spousal maintenance).  In addition, County Line Enterprises agreed to undertake that obligation before the district court issued its final decree of divorce, *cf. Burns v. Seascape Owners Ass'n*, No. 01-11-00752-CV, 2012 Tex. App. LEXIS 7732, at *33 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) (noting when deciding that appeal was moot that party paid assessment before judgment was rendered), and nothing in the record or the affidavits reveals that the note was executed for any purpose, save perhaps tax or business benefits for Norton, other than to satisfy the judgment, *cf. Beadles*, 2007 Tex. App. LEXIS 3861, at *6-7 (overruling motion to dismiss, in part, because affidavit by party opposing motion to dismiss stated that judgment was paid for sole purpose of allowing him to clear title to property so that he could sell it).

Other than the notice of appeal, the record in this case reveals that the first clear expression of an intent to appeal the district court's judgment by Norton occurred approximately three weeks after the note was executed when he filed a motion to confirm supersedeas.  In light of the remainder of the record, particularly the unconditional note, as well as the contents of the two affidavits, we do not believe that this statement suffices in the circumstances present here as a timely and clear expression of the right to appeal sufficient to prevent the application of the voluntary-payment rule.

**Appellate Relief is Futile**

In addition to arguing that he had clearly articulated his intention to appeal the district court's divorce decree, Norton asserts that an appeal would not be futile. Specifically, he urges that if he is successful on appeal, "as to either his characterization issue or his valuation issue, remand will follow, and potential restitution will be available." *See Miga*, 299 S.W.3d at 101 (explaining that "[r]estitution after reversal has long been the rule in Texas"). Moreover, Norton urges that "[r]eversal of the trial court's erroneous characterization of the . . . shares will obviate the trial court's equalizing judgment, which in turn will obviate the . . . note payable to . . . Cheney. Thus, . . . Norton submits, appellate relief is not futile." Further, Norton contends that the terms of the judgment specified that he was liable for the amount owed and that although County Line Enterprises executed a note in favor of Cheney for the amount of the district court's judgment, the note has not been paid in full.

However, the facts of this case undermine Norton's assertion that restitution is possible. As a preliminary matter, we note that the core issue on appeal concerns the characterization of specific stocks as community property, which served as the basis for the monetary judgment issued in favor of Cheney, and there is no allegation regarding prospective or similar relief that might keep the controversy from being mooted by an agreement to pay the judgment. *See Smith*, 311 S.W.3d at 79 (explaining that party was not seeking any prospective relief that might keep controversy from being mooted by agreement to pay). Moreover, unlike the cases relied on by Norton, the promise to pay the judgment at issue and the first installment under the promissory note were made by a third party rather than a party to the dispute. *See Padgitt v. Young Cnty.*, 229 S.W. 459,

10

459 (Tex. 1921) (determining that appeal became moot when amount of judgment was paid by third party and accepted by judgment creditor); *cf. Employees Fin. Co. v. Lathram*, 369 S.W.2d 927, 929-30 (Tex. 1963) (determining that appeal was moot when amount of judgment was paid by nonappealing codefendant); *Haas v. Corman*, No. 05-01-00568-CV, 2002 Tex. App. LEXIS 2242, at *1 (Tex. App.—Dallas Mar. 28, 2002, no pet.) (applying rationale from *Lathram* to conclude that appeal was moot). Accordingly, even assuming that this Court disagreed with the district court's characterization of the property at issue, that determination would not seem to have any immediate impact on the independent agreement between County Line Enterprises and Cheney and certainly could not lead to any restitution award in favor of Norton because he has not paid any portion of the judgment. *See Crain v. Crain*, No. B14-93-00113-CV, 1995 Tex. App. LEXIS 295, at *3-4 (Tex. App.—Houston [14th Dist.] Feb. 16, 1995, no pet.) (noting that reversal and remand would provide no basis for appellant to seek reimbursement from appellee and that "[i]f reversing has no effect on the rights of the parties, the case is moot").

In addition, although Cheney has not yet been paid the full amount of the judgment, the agreement by County Line Enterprises to pay the amount of the judgment has resolved the controversy between Cheney and Norton, and it would seem that any future recourse for a default in payments would be litigated under the terms of the unconditional note. Moreover, to the extent that Norton suggests that Cheney might seek compensation from him if County Line Enterprises ever defaults, we do not believe that this type of speculation demonstrates a live controversy between the parties. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (explaining that "[i]f a controversy ceases to exist—'the issues presented are no longer "live" or the parties lack a legally cognizable

11

interest in the outcome'—the case becomes moot" (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982))); *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846-47 (Tex. App.—Austin 2002, pet. denied) (stating that "[a] case becomes moot when: (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists; or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy"); *cf. Smith*, 311 S.W.3d at 78-79 (explaining that assertion that Attorney General's Child Support Division might miscalculate future child-support arrearages was too remote and speculative to give rise to justiciable claim and prevent claim regarding past arrearages from being deemed moot). This seems particularly true here where the record demonstrates that Norton is the majority owner of County Line Enterprises and seemingly approved the execution of the note, in part, to avoid business or tax consequences to himself.

In light of the preceding, we must conclude that any appellate relief requested by Norton would not have any practical legal effect on an existing controversy between the parties and would be futile. For all of the reasons previously given, we conclude that the execution of a promissory note by County Line Enterprises in favor of Cheney to cover the amount owed to Cheney under the district court's divorce decree mooted the controversy between Cheney and Norton regarding the characterization of stocks as community property.

## CONCLUSION

Having determined that the appeal in this case has been mooted, we grant Cheney's motion to dismiss this appeal.

12

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Goodwin

Dismissed on Appellee's Motion

Filed:   August 14, 2015